**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| COAST RUNNER, INC., )<br><br>                    Plaintiff, )<br><br>     v. )<br><br>KICKSTARTER, PBC; INDIEGOGO, INC.;<br>LAUNCHBOOM, INC.; JOHN DOES #1 AND #2, )<br><br>                    Defendants. ) | Civil Action No. 7:24-cv-00326-DC-RCG<br><br>District Judge David Counts<br>Magistrate Judge Ronald C. Griffin |

## KICKSTARTER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT UNDER RULE 12(b)(6)

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     STATEMENT OF ALLEGED FACTS .................................................................... 2

        A.    Kickstarter's Crowdfunding Platform.......................................................... 2

        B.    Coast Runner and its Milling Machine ........................................................ 3

        C.    Coast Runner Launches Its Campaign on Kickstarter and It Is Terminated for
              Inaccurate Product Disclosures.................................................................... 4

        D.    Coast Runner Races to Indiegogo and Its Campaign Reaches a Similar Fate.........5

        E.    Coast Runner Loses the Race to Its Alleged Competitor and Concludes that
              Kickstarter and Indiegogo Must Have Coordinated Their Efforts Due to
              Pressure from Unnamed Anti-Gun-Rights Advocates................................. 6

III.    LEGAL STANDARD ............................................................................................... 7

IV.     ARGUMENT .......................................................................................................... 7

        A.    Coast Runner Lacks Antitrust Standing Because It Has Not Suffered an
              Antitrust Injury............................................................................................. 8

        B.    Coast Runner Fails to Identify a Conspiracy with Anticompetitive Motivation
              or Effects as Required to Plead its Antitrust Claims.................................. 11

        C.    Coast Runner's Antitrust Claims Also Fail Because Antitrust Law Does Not
              Cover Political or Ideological Boycotts Like That Alleged by Coast Runner.......15

        D.    Section 230 of the Communications Decency Act Further Immunizes
              Kickstarter from Antitrust Liability for Choosing to Remove Coast Runner........18

        E.    Coast Runner's Conspiracy Claim is Not a Standalone Cause of Action and
              Should Be Dismissed with Its Antitrust Claims. .................................. 19

V.      CONCLUSION ......................................................................................................... 20

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*303 Creative LLC v. Elenis*,
  600 U.S. 570 (2023)........................................................................16

*A.B. v. Salesforce, Inc.*,
  123 F.4th 788 (5th Cir. 2024) ........................................................18

*Agar Corp. v. Electro Circuits Int'l, LLC*,
  580 S.W.3d 136 (Tex. 2019)...........................................................19

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.*,
  300 F.3d 620 (5th Cir. 2002) ...........................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................7, 11, 12

*Bondi v. VanDerStok*,
  2025 WL 906503 (U.S. Mar. 26, 2025) ...........................................5

*BRFHH Shreveport, LLC v. Willis Knighton Med. Ctr.*,
  176 F. Supp. 3d 606 (W.D. La. 2016)...............................................8

*California v. Coast Runner Industries Inc., et al*,
  3:24-CV-00971-AJB-SBC (California Litigation #2) ..........................4

*Callier v. Nat'l United Grp., LLC*,
  2021 WL 5393829 (W.D. Tex. Nov. 17, 2021)............................19, 20

*Cathedral Trading, LLC v. Chicago Bd. Options Exch.*,
  199 F. Supp. 2d 851 (N.D. Ill. 2002) ................................................9

*Children's Health Def. v. Meta Platforms, Inc.*,
  112 F.4th 742 (9th Cir. 2024) ........................................................18

*Cicalese v. Univ. of Tex. Medical Branch*,
  456 F. Supp. 3d 859 (S.D. Tex. 2020) ............................................12

*Cousins v. Goodier*,
  283 A.3d 1140 (Del. 2022) .............................................................20

*Craftsmen Limousine, Inc. v. Ford Motor Co.*,
    363 F.3d 761 (8th Cir. 2004) ...............................................................14

*Davis v. Tarrant Cnty.*,
    565 F.3d 214 (5th Cir. 2009) ................................................................7

*Defense Distributed v. Bonta*,
    No. 2:22-CV-6200-GW-AGR (C.D. Cal., filed Aug. 31, 2022)......................3, 4, 5

*Doctor's Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*,
    123 F.3d 301 (5th Cir. 1997) ................................................................9

*Doe v. MySpace, Inc.*,
    528 F.3d 413 (5th Cir. 2008) ...............................................................18

*Dorsey v. Portfolio Equities, Inc.*,
    540 F.3d 333 (5th Cir. 2008) ................................................................3

*FTC v. Superior Court Trial Lawyers Ass'n*,
    493 U.S. 411 (1990).............................................................................16

*Futurevision Cable Sys. of Wiggins, Inc. v. Multivision Cable TV Corp.*,
    789 F. Supp. 760 (S.D. Miss. 1992)......................................................12

*Games People Play, Inc. v. Nike, Inc.*,
    2015 WL 13657672 (E.D. Tex. Feb. 13, 2015) .......................................9

*Ginzburg v. Mem'l Healthcare Sys., Inc.*,
    993 F. Supp. 998 (S.D. Tex. 1997) ........................................................8

*GiveForward, Inc. v. Hodges*,
    2015 WL 4716046 (D. Md. Aug. 6, 2015) .............................................19

*Golden Bridge Tech., Inc. v. Motorola, Inc.*,
    547 F.3d 266 (5th Cir.2008) ...............................................................11

*Jebaco, Inc. v. Harrah's Operating Co.*,
    587 F.3d 314 (5th Cir. 2009) .......................................................8, 9, 15

*Klor's, Inc. v. Broadway-Hale Stores, Inc.*,
    359 U.S. 207 (1959)............................................................................15

*Lama v. Meta Platforms, Inc*.,
    732 F. Supp. 3d 214 (N.D.N.Y. 2024)...................................................18

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007)............................................................................13

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
   925 F.3d 1263 (D.C. Cir. 2019) ...................................................................19

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*,
   751 F.3d 368 (5th Cir. 2014) .....................................................................11

*Missouri v. Nat'l Org. for Women, Inc.*,
   620 F.2d 1301 (8th Cir. 1980) ........................................................10, 11, 15

*NAACP v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982)............................................................................ *passim*

*Nw. Wholesale Stationers, Inc. v. Pac. Stationary & Printing Co.*,
   472 U.S. 284 (1985)...................................................................................13

*Pickett v. InfoUSA, Inc.*,
   561 F. Supp. 2d 646 (E.D. Tex. 2006) .......................................................18

*Salts v. Moore*,
   107 F. Supp. 2d 732 (N.D. Miss. 2000).....................................................12

*Sanger Ins. Agency v. HUB Int'l, Ltd.*,
   802 F.3d 732 (5th Cir.2015) ........................................................................8

*Tesla, Inc. v. La. Auto. Dealers Ass'n*,
   113 F.4th 511 (5th Cir. 2024) ......................................................................8

*Tummel v. Milane*,
   787 F. App'x. 226 (5th Cir. 2019) .............................................................19

*Tunica Web Advert. v. Tunica Casino Operators Ass'n*,
   496 F.3d 403 (5th Cir. 2007) .....................................................................13

*U.S. Trotting Ass'n v. Chicago Downs Ass'n, Inc.*,
   665 F.2d 781 (7th Cir. 1981) .....................................................................13

*Vaughn Med. Equip. Repair Serv., L.L.C. v. Jordan Reses Supply Co.*,
   2010 WL 3488244 (E.D. La. Aug. 26, 2010) ..............................................9

*W. Tex. Utils. Co. v. Tex. Elec. Serv. Co.*,
   470 F. Supp. 798 (N.D. Tex. 1979) ..................................................9, 11, 13

*Zaragoza v. Union Pac. R.R. Co.*,
   606 F. Supp. 3d 427 (W.D. Tex. 2022)........................................................3

**Statutes**

15 U.S.C. § 1...................................................................................................11

47 U.S.C. § 230(c)(1)..................................................................................................18

47 U.S.C. § 230(c)(2)(A)............................................................................................18

TEX. BUS. & COM. CODE § 15.04 ..............................................................................7

**Rules**

Fed. R. Civ. P. 12(b)(6).......................................................................................1, 7, 20

## I.      INTRODUCTION

This is not an antitrust case. Nor is it a case about the Second Amendment. Rather, Coast Runner, Inc. ("Coast Runner") is unhappy that Kickstarter, PBC ("Kickstarter") and Indiegogo, Inc. ("Indiegogo") terminated Coast Runner's campaign on their crowdfunding platforms after each learned that the Coast Runner CNC milling machine was in reality a repackaged, cleverly renamed version of the "Ghost Gunner" milling machine designed for manufacturing DIY firearms sold by another of the Coast Runner founders' businesses. Coast Runner attempts to dress up that dissatisfaction as an antitrust violation by alleging that Kickstarter and Indiegogo "colluded" to terminate Coast Runner's crowdfunding campaigns as part of an "illegal boycott." But like its initial complaint, Coast Runner's First Amended Complaint (ECF No. 30; "FAC"), fails to state a claim for which relief can be granted requiring dismissal under Rule 12(b)(6).[1]

As a threshold issue, Coast Runner lacks "antitrust standing" required to pursue its antitrust claims because its alleged injury is not of the kind recognized by antitrust law. Specifically, Coast Runner does not allege that Kickstarter terminated the Coast Runner campaign for a non-political, economic benefit as required to plead an antitrust violation. Rather, Coast Runner alleges that its campaign was terminated because Kickstarter, Indiegogo, and another Defendant, Label Creative, LLC d/b/a Launchboom ("Launchboom") "agreed to" a "conspiracy through which all three [companies] would refuse to promote" Coast Runner "because of its founders' political views." FAC ¶ 11. But even if there had been some joint agreement here (there was not), boycotts motivated by political reasons fall outside the reach of antitrust law, and instead have been repeatedly deemed constitutionally protected speech. The same result is warranted here. Coast

---

[1] Kickstarter filed a motion to dismiss Coast Runner's initial complaint on February 28, 2025, and instead of opposing that motion, Coast Runner filed an amended complaint.

Runner attempts to avoid the well-recognized protections for political boycotts by dressing up Kickstarter and Indiegogo's alleged refusal to deal as motivated by a desire to "encourag[e] the public perception that the crowdfunding platforms were aligned with their customers' social values." FAC ¶ 101. But Coast Runner's false allegations are based on pure conjecture and do nothing to escape dismissal, even as the Court accepts them as true; instead, they merely reinforce that the alleged boycott was motivated by First-Amendment protected political objectives.

Coast Runner's allegations are insufficient to state a claim under antitrust law, and Counts 1 and 2 should be dismissed on that basis as a matter of law. And civil conspiracy (Count 3)—the only other claim asserted against Kickstarter—is not a viable stand-alone cause of action and likewise requires dismissal. To be clear, this Court should not reach these issues because Coast Runner sued in violation of the parties' forum-selection clause, as explained in Kickstarter's transfer motion, ECF No. 19. But were the Court to address the FAC, dismissal is warranted for failure to state a claim.

## II.    STATEMENT OF ALLEGED FACTS

### A.    Kickstarter's Crowdfunding Platform

Crowdfunding is "the use of social media to raise money from many smaller investments or donations rather than a handful of large ones," and is one way that entrepreneurs may choose to raise money to support their businesses. FAC ¶ 1. Entrepreneurs who choose to do so create campaigns for their projects and consumer investors can contribute money. *Id.* ¶ 2. Crowdfunding sites earn money through fees taken out of those contributions. *Id.* ¶¶ 2, 41.

Kickstarter is a public benefit corporation, with a mission to help bring creative projects to life primarily through its crowdfunding platform. *Id.* ¶¶ 2, 17, 42. The process for launching a campaign is robust. *Id.* Creators must accept Kickstarter's Terms of Use, agree to adhere to safety standards, and make accurate disclosures about their products. *Id.* ¶¶ 44-46. Kickstarter has

supported nearly 270,000 projects from millions of contributors from all over the world. *Id.* ¶ 42.

Indiegogo also offers a crowdfunding platform. *Id.* ¶¶ 1-2. Launchboom acts as a crowdfunding expert to assist clients with navigating their relationships with crowdfunding platforms and developing and marketing crowdfunding campaigns. *Id.* ¶¶ 1, 47-49.

### B.    Coast Runner and its Milling Machine

Coast Runner was founded by CEO Cody Wilson and CTO Garrett Walliman to design and manufacture tabletop computer numerical control ("CNC") mills. *Id.* ¶¶ 16, 31. Wilson also owns Defense Distributed, which sells a CNC mill called the "Ghost Gunner." *Id.* ¶ 30 In describing Defense Distributed's mission and product, the FAC cites *Defense Distributed v. Bonta*, No. 2:22-CV-6200-GW-AGR (C.D. Cal., filed Aug. 31, 2022) ("California Litigation #1"),[2] where Defense Distributed sued the State of California over its Ghost Gunner ban. Notably, while the FAC goes to great lengths to describe the Ghost Gunner as being a special-purpose machine designed and marketed to manufacture parts for making, repairing, or modifying firearms (*id.* ¶ 30), in California Litigation #1, Defense Distributed described the Ghost Gunner as a general-purpose machine, just as Coast Runner now describes its mill in the FAC.[3]

Wilson launched Coast Runner after the Ghost Gunner faced regulatory and legal challenges. *Id.* ¶ 30. Coast Runner emphasizes the universal application of the Coast Runner mill

---

[2] *See Zaragoza v. Union Pac. R.R. Co.*, 606 F. Supp. 3d 427, 431 n.1 (W.D. Tex. 2022) ("A court may take judicial notice of the record in prior related proceedings and draw reasonable inferences therefrom" on a motion to dismiss) (cleaned up); *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("A court is permitted, [in evaluating a motion to dismiss for failure to state a claim], to rely on documents incorporated into the complaint by reference.").

[3] *Compare* Compl. ¶ 15, *Def. Distrib. v. Bonta*, No. 2:22-CV-6200-GW-AGR (C.D. Cal. Aug. 31, 2022), ECF No. 1 (describing "Ghost Gunner" as "general purpose CNC milling machine") *with* FAC ¶¶ 31-32 ("Wilson and Walliman decided to develop an all-purpose computer-controlled desktop milling machine . . . The prototype they developed, the CR-1, vastly improved on the [Ghost Gunner] special-purpose milling machine sold by Defense Distributed").

(*id.* ¶¶ 31-34), but it is, at its core, a cleverly renamed, repackaged, if perhaps improved, Ghost Gunner. *Id.* ¶ 32. In other words, as the State of California explained in *California v. Coast Runner Industries Inc., et al*, No. 3:24-CV-00971-AJB-SBC (S.D. Cal. June 3, 2024), ECF No. 1-8 ("California Litigation #2") as part of its lawsuit against Coast Runner, the Coast Runner was a thinly vailed attempt by Wilson to evade California law, undermine Defense Distributed's loss in California Litigation #1, and sell firearm mills in California. California Litigation #2, Compl. ¶ 6.[4]

**C.    Coast Runner Launches Its Campaign on Kickstarter and It Is Terminated for Inaccurate Product Disclosures.**

Coast Runner engaged with Launchboom to help launch a crowdfunding campaign in the summer of 2023. FAC ¶¶ 52-53. Around that same time, Coast Runner also had discussions with Indiegogo, but decided to go with Kickstarter. *Id.* ¶¶ 55, 59. The Coast Runner campaign launched on February 27. *Id.* ¶ 70. However, a few hours in, the campaign was hidden from certain users because, as Kickstarter explained, "Coast Runner had failed to disclose that [its] project contained an artificial intelligence [] component" as part of a software tool offered to backers. *Id.* ¶ 73. The FAC does not dispute that this box was unchecked but argues that Kickstarter was aware of the software prior to the launch. *Id.* ¶¶ 74-75. That evening, Kickstarter's Trust & Safety Team emailed Coast Runner explaining its campaign would terminate in 48 hours. *Id.* ¶ 76. The Kickstarter campaign was terminated on February 29. *Id.* ¶ 90. Coast Runner alleges that Launchboom discontinued its business relationship with Coast Runner shortly after. *Id.* ¶ 91. Kickstarter returned money already contributed to the campaign to the contributors. *Id.* ¶ 104.

---

[4] "The 'Coast Runner' and the 'Ghost Gunner' . . . the same internal designs, the same features, and [are] . . . being sold and marketed by the same company, as public records show that Coast Runner Industries, Inc. is merely an alter ego of Ghost Gunner Inc. and Defense Distributed." *Id.* On April 3, 2025, the California Court granted a preliminary injunction prohibiting Coast Runner from selling its mill. California Litigation #2, Dkt. No 126.

Coast Runner did not believe that the campaign was terminated for the reason Kickstarter provided. *Id.* ¶ 79. Instead, based on their own conjecture, Wilson and Walliman "surmised [] if Kickstarter [] turned on Coast Runner [], the most likely reason was that an [unnamed, unidentified] individual (John Doe #1) acting on behalf of an [unnamed, unidentified] organization opposed to gun rights (John Doe #2) urged . . . Kickstarter[] to rescind" Coast Runner's campaign. *Id.* Despite the FAC's allegations that the Coast Runner has nothing to do with firearms, the FAC also explains that in Wilson and Walliman's "experience,[5] organizations that oppose [] the right to bear arms would often target the [] commercial relationships of whomever they sought to weaken" by "contact[ing] the potential [] commercial counterparty of the disfavored actor under a friendly guise, couching their disapproval in terms of public opinion." *Id.* ¶ 80. "[S]uch organizations would state, either expressly or by implication, that if the counterparty did not sever ties with [] Wilson and Walliman, the organization would undertake a public-relations campaign to embarrass and harass the potential counterparty, driving customers or clients away from that entity as a punishment for their doing business with an individual or entity who supported the right to bear arms." *Id.* Further, the FAC postulates that the Does' goal was to "deprive Wilson and Walliman of the resources necessary to defend their [] Second-Amendment-related ventures both in and out of court." *Id.* "In other words, John Does #1 and #2" encouraged a ***political boycott***. *See id.*

### D.     Coast Runner Races to Indiegogo and Its Campaign Reaches a Similar Fate.

Coast Runner raced to launch its campaign on Indiegogo and did so just days later on February 29. *Id.* ¶¶82-87, 93. But Coast Runner's Indiegogo campaign was suspended later that day. *Id.* ¶ 94. And like Kickstarter, Indiegogo returned the contributions already made. *Id.* ¶ 104.

---

[5] In addition to California Litigation #1 and #2, Wilson's other business venture has recently lost a challenge regarding regulations of "weapons parts kits." *Bondi v. VanDerStok*, 2025 WL 906503, at *2 (U.S. Mar. 26, 2025).

**E.    Coast Runner Loses the Race to Its Alleged Competitor and Concludes that Kickstarter and Indiegogo Must Have Coordinated Their Efforts Due to Pressure from Unnamed Anti-Gun-Rights Advocates.**

Coast Runner alleges that due to Kickstarter and Indiegogo's termination of its campaigns, a competing product, "Carvera Air," was able to gain traction through its own successful Kickstarter campaign, which launched on April 9, 2024. *Id.* ¶107. The company behind Carvera Air is not a party to this action nor does the FAC allege that it was involved in any way in Kickstarter's decision not to do business with Coast Runner.

Frustrated by the termination of its campaigns and the success of their (alleged) competitor's campaign and unhappy with Kickstarter's explanation, Wilson and Walliman allege they set out to investigate why Kickstarter, Indiegogo, and Launchboom ended their relationships with Coast Runner. *Id.* ¶ 95. Coast Runner alleges that it learned that "John Doe #1 and John Doe #2's **lobb[ied]** [] Kickstarter to end its relationship with Wilson, Walliman, and Coast Runner." *Id.* ¶ 88 (emphasis added). And after Kickstarter terminated Coast Runner's campaign, Kickstarter contacted Indiegogo to express "disapproval of Coast Runner," and Kickstarter and Indiegogo then "agreed to jointly refuse to provide crowdfunding campaign services to Coast Runner." *Id.* ¶ 100. Coast Runner further alleges that despite the alleged non-firearm focus of the Coast Runner mill, Kickstarter, Indiegogo and Launchboom's (purported) agreement not to work with Coast Runner was motivated by a desire "to avoid the negative economic impact that would follow from the public-relations campaign John Does #1 and #2 [the unnamed gun rights activists] had threatened," while "encouraging the public perception that the crowdfunding platforms were aligned with their customers' *social values*." *Id.* ¶ 101 (emphasis added).

Based on this alleged agreement, Coast Runner filed this action on December 9, 2024 alleging that Kickstarter, Indiegogo, and Launchboom's alleged conspiracy not to deal with Coast Runner violated Section 1 of the Sherman Act and its Texas analogue, the Texas Free Enterprise

and Antitrust Act ("TFEAA"). The FAC further alleges a separate count of Civil Conspiracy against Kickstarter premised on its antitrust claims. Kickstarter and Indiegogo filed Motions to Dismiss under Rule 12(b)(6), ECF Nos. 17-18, and Motions to Transfer, ECF Nos. 16, 19. In lieu of responding to Defendants' Motions to Dismiss, Coast Runner filed the FAC on March 21, 2025, ECF No. 30, and the Court approved Coast Runner's FAC on March 25, 2025.

## III.    LEGAL STANDARD

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party. *See Davis v. Tarrant Cnty.*, 565 F.3d 214, 217 (5th Cir. 2009) (citation omitted). Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face," which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). And while the Court accepts well-pleaded *facts* as true, it is not required to accept legal conclusions as true. *Ashcroft*, 556 U.S. at 677-78.

## IV.    ARGUMENT

Coast Runner fails to state any valid claim for relief against Kickstarter because each of its claims (state and federal antitrust violations and civil conspiracy) suffer from fatal flaws. ***First***, Coast Runner's antitrust claims (Counts 1 and 2) fail because Coast Runner lacks antitrust standing.[6] ***Second,*** Coast Runner has failed to allege a viable conspiracy with any anticompetitive

---

[6] This is true for Coast Runner's federal antitrust claims under the Sherman Act as well as its state antitrust claims under the TFEEA, which courts interpret "in harmony with federal judicial interpretations of equivalent federal laws." *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d

effects of the alleged boycott of Coast Runner. ***Third,*** Coast Runner's antitrust claims fail because the FAC alleges that Kickstarter, Indiegogo, and Launchboom were motivated to exclude Coast Runner by constitutionally protected political reasons. ***Fourth,*** Section 230 of the Communications Decency Act also immunizes crowdfunding platforms—like Kickstarter and Indiegogo—from liability for their decisions to remove Coast Runner. ***Finally***, civil conspiracy (Count 5) is merely a theory of liability and must be dismissed along with the antitrust claims.

### A.    Coast Runner Lacks Antitrust Standing Because It Has Not Suffered an Antitrust Injury.

Coast Runner lacks antitrust standing to pursue its claim under the Sherman Act and TFEAA. To establish antitrust standing, a plaintiff must plead "1) injury-in-fact[]; 2) antitrust injury; and 3) proper plaintiff status." *BRFHH Shreveport, LLC v. Willis Knighton Med. Ctr.*, 176 F. Supp. 3d 606, 626 (W.D. La. 2016) (citing *Sanger Ins. Agency v. HUB Int'l, Ltd.*, 802 F.3d 732, 737 (5th Cir.2015) (citing *Jebaco, Inc. v. Harrah's Operating Co.,* 587 F.3d 314, 318 (5th Cir. 2009))). "The Supreme Court has defined antitrust injury as an injury of the type the antitrust laws were intended to prevent . . . . The injury should reflect the anticompetitive effect either of the violation or of the anticompetitive acts made possible by the violation." *Tesla, Inc. v. La. Auto. Dealers Ass'n*, 113 F.4th 511, 528 (5th Cir. 2024) (cleaned up). The Fifth Circuit has "narrowly interpreted the meaning of antitrust injury." *Id.*

To demonstrate antitrust injury, "an antitrust plaintiff must prove that the challenged conduct affected the prices, quantity or quality of goods or services and ***not just his own welfare***." *Ginzburg v. Mem'l Healthcare Sys., Inc.*, 993 F. Supp. 998, 1015 (S.D. Tex. 1997). (emphasis added). In other words, "the antitrust laws protect consumers by maintaining competition for price,

---

620, 628 (5th Cir. 2002) (citing Tᴇx. Bᴜs. & Cᴏᴍ. Cᴏᴅᴇ § 15.04).

but they do not protect the ability of particular consumers to take advantage of a business opportunity unless they can show that and how their exclusion from that opportunity affects prices for everyone." *Cathedral Trading, LLC v. Chicago Bd. Options Exch.*, 199 F. Supp. 2d 851, 860–61 (N.D. Ill. 2002). While a plaintiff need not plead injury to competition to survive a motion to dismiss, the pleading must demonstrate that the suffered injuries are among "the types of injuries that the antitrust laws were intended to prevent." *Vaughn Med. Equip. Repair Serv., L.L.C. v. Jordan Reses Supply Co.*, 2010 WL 3488244, at *13 (E.D. La. Aug. 26, 2010).[7]

Courts are particularly focused on "antitrust injury" where, as here, a plaintiff alleges an "atypical" fact pattern outside the "classical" antitrust case. *Doctor's Hosp. of Jefferson, Inc. v. Se. Med. All., Inc.*, 123 F.3d 301, 306 (5th Cir. 1997); *Jebaco, Inc.*, 587 F.3d at 319 (finding no "antitrust injury" where "[n]either allegation fit[] within a 'classical' antitrust fact pattern").

While the FAC alleges "*per se* illegal collusion" and an "illegal group boycott" (FAC ¶¶ 15, 106), this is *ipse dixit* and the FAC fails to allege *facts* to support such bald legal conclusions. The Fifth Circuit has "recognized three types of group boycotts that are *per se* violations of the antitrust laws: (1) horizontal combinations among traders at one level of distribution, whose purpose is to exclude direct competitors from the market . . . ; (2) vertical combinations among traders at different marketing levels, designed to exclude from the market direct competitors of some members of the combination . . . ; and (3) combinations designed to influence coercively the trade practices of boycott victims rather than to eliminate them as competitors." *W. Tex. Utils. Co. v. Tex. Elec. Serv. Co.*, 470 F. Supp. 798, 816 (N.D. Tex. 1979).

---

[7] *See, e.g., Games People Play, Inc. v. Nike, Inc.*, 2015 WL 13657672, at *5 (E.D. Tex. Feb. 13, 2015) (finding antitrust injury flowing from "a valid allegation of price discrimination—a type of injury that the antitrust laws were intended to prevent"); *Jebaco, Inc.*, 587 F.3d at 319 (deprivation of a "per-patron fee" and lost "opportunity to compete" "fail to allege antitrust injury").

Coast Runner does not allege any one of the three recognized forms of *per se* boycotts. Nor could it. Coast Runner is not a crowdfunding platform nor a crowdfunding expert and thus does not compete with Kickstarter, Indiegogo, or Launchboom. Nor does Coast Runner contend that any defendant conspired with its competitor, Carvera Air, to eliminate competition or that the alleged boycott was for the purpose of harming its ability to compete or alter its trade practices.

Instead, the FAC is clear—the alleged boycott was intended to advance a **political** goal, rather than to "destroy legitimate competition." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 914 (1982). The FAC, in fact, alleges that the boycott was initiated by the Does "**lobbying** of Kickstarter to end its relationship with [] Coast Runner" with the objective to cut Coast Runner "off from capital markets" by threatening to "publicize Kickstarter's hosting of the Coast Runner product," so "they could deprive Wilson and Walliman of the resources necessary to defend their separate Second-Amendment-related ventures both in and out of court." FAC ¶¶ 88, 13, 80 (emphasis added). But antitrust law is simply not intended to protect businesses from discrimination on the basis of their political activities or punish businesses for choosing to align their commercial decisions with their political views or those of their customers. *See Missouri v. Nat'l Org. for Women, Inc.*, 620 F.2d 1301, 1309 (8th Cir. 1980) (explaining "the legislative history of the Sherman Act indicates Congress did not intend to prohibit . . . [political] boycott[s]").

Coast Runner's attempt to characterize Kickstarter's participation in the alleged boycott as aimed at avoiding a PR backlash only reinforces the fact that its allegations do not fit the mold of an antitrust case. Despite claiming that Kickstarter did not participate in the alleged boycott for "*purely* political motivations," FAC ¶ 101 (emphasis added), the FAC in fact **admits** that Kickstarter and Indiegogo allegedly colluded out of a desire to demonstrate that they "aligned with their customers' **social values**." *Id.* (emphasis added). Of course, as courts have acknowledged,

while political boycotts may be designed to cause economic injuries to accomplish political ends, these injuries simply do not rise to the level of antitrust injuries, *i.e.,* injuries caused by actions to limit legitimate competition. *W. Tex. Utils. Co.*, 470 F. Supp. at 815; *see Claiborne*, 458 U.S. at 914 (finding politically-aimed boycott not actionable under antitrust law despite the fact that "the petitioners certainly foresaw—and directly intended—that the merchants would sustain economic injury as the result"). No such action is alleged here.

Therefore, Coast Runner's alleged exclusion from Indiegogo's and Kickstarter's platforms for political reasons is not the kind of injury antitrust law is designed to prevent. The FAC thus fails to plead antitrust injury, and Coast Runner lacks antitrust standing to pursue its claims. *W. Tex. Utils. Co.*, 470 F. Supp. at 815. Coast Runner's antitrust claims should be dismissed.

**B.    Coast Runner Fails to Identify a Conspiracy with Anticompetitive Motivation or Effects as Required to Plead its Antitrust Claims.**

To establish a violation of Section 1 of the Sherman Act, an antitrust plaintiff must demonstrate that: "(1) [the Defendants] engaged in a conspiracy, (2) the conspiracy had the effect of restraining trade, and (3) trade was restrained in the relevant market." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 373 (5th Cir. 2014) (citing 15 U.S.C. § 1). As to the element of conspiracy, "the crucial question is whether the challenged anticompetitive conduct stems from independent decision or from an agreement." *Twombly*, 550 U.S. at 553. The plaintiff must plead that the defendants engaged in concerted action with "a conscious commitment to a common scheme designed to achieve an unlawful objective." *Sports*, 751 F.3d at 373-74 (citing *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 271 (5th Cir.2008)).

The FAC does not even satisfy the first element, i.e., that defendants engaged in a conspiracy. To plead a conspiracy, Coast Runner needed to ***plausibly*** allege "that the defendants engaged in concerted action, defined as having a conscious commitment to a common scheme

designed to achieve an unlawful objective." *Id.*; *see also Twombly*, 550 U.S. at 557 (antitrust plaintiff must allege facts "plausibly suggesting . . . agreement"). It did not do so. Instead, the FAC alleges that Kickstarter, Indiegogo, and Launchboom entered a conspiracy, ***against their own economic interests***. *See* FAC ¶¶ 41, 92, 104.

In an effort to obscure this failure, the FAC presents illogical, contradictory assertions that this Court need not accept as true.[8] The FAC maintains that Kickstarter conspired with "its rival," Indiegogo, **both** so that it could prevent "Indiegogo [from] realiz[ing] the [] economic gains from hosting" Coast Runner **and** so that Kickstarter and Indiegogo could each "avoid the negative economic impact that would follow from the public-relations campaign [the Does] had threatened." FAC ¶¶ 14, 101. These allegations are factually inconsistent and facially illogical. Presumably, whatever economic risk might be associated with the PR hit of doing business with Coast Runner would net out similarly against the money to be gained from the Coast Runner campaign for both Kickstarter and Indiegogo. And there is no benefit to either competitor for their chief rival to avoid the same alleged PR nightmare of associating with Coast Runner. As pled, Kickstarter would have been doing Indiegogo a favor by informing its "chief" competitor of the risks of doing business with Coast Runner. The story simply makes no sense and does not plausibly allege concerted action or conscious commitment. Courts dismiss antitrust claims where (as here), the pled conspiracy is implausible, and this Court should do the same.[9]

---

[8] *Cicalese v. Univ. of Tex. Medical Branch*, 456 F. Supp. 3d 859, 866 (S.D. Tex. 2020) ("Where [a] plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true.") (citations omitted).

[9] *See, e.g.*, *Futurevision Cable Sys. of Wiggins, Inc. v. Multivision Cable TV Corp.*, 789 F. Supp. 760, 779 (S.D. Miss. 1992) (dismissing antitrust conspiracy claims where plaintiff failed to plead any "rational economic motive to conspire"); *Salts v. Moore*, 107 F. Supp. 2d 732, 742-43 (N.D. Miss. 2000) (granting motion for judgment on the pleadings where complaint failed to set forth "any rational economic motive for the [defendants] to conspire").

But even if Coast Runner had alleged plausible facts demonstrating conspiracy (it did not), a court must determine "whether [the alleged conduct] violates §1" "by the appl[ying] either the *per se* rule or the rule of reason." *Sports*, 751 F.3d at 34.

       1.     Coast Runner Does Not Allege Facts to Support Application of the *Per Se* Standard.

The "*per se* rule is appropriate only after courts have had considerable experience with the type of restraint at issue and only if courts can predict with confidence that it would be invalidated in all or almost all instances under the rule of reason." *Id*. at 373 (citing *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886–87 (2007)). But as explained in Section IV.A, *supra*, "[t]he Fifth Circuit has recognized three types of group boycotts that are *per se* violations of the antitrust laws," none of which are applicable here. *W. Tex. Utils. Co.*, 470 F. Supp. at 816; *see also U.S. Trotting Ass'n v. Chicago Downs Ass'n, Inc.*, 665 F.2d 781, 788 (7th Cir. 1981) (*per se* rule should "not be applied, and has never been applied by the Supreme Court, to concerted refusals that are not designed to drive out competitors but to achieve some other goal") (citations omitted).

And where, as here, an alleged group boycott does **not** fall into one of the three categories, the Court must then consider the "purpose of the alleged boycott" to determine if rule of reason or *per se* analysis should be applied. *W. Tex. Utils. Co.*, 470 F. Supp. at 817. In doing so, courts consider "(1) whether the [defendants] hold a dominant position in the relevant market; (2) whether [they] control access to an element necessary to enable [the plaintiff] to compete; and (3) whether there exist plausible arguments concerning pro-competitive effects" of the boycott. *Tunica Web Advert. v. Tunica Casino Operators Ass'n,* 496 F.3d 403, 414–15 (5th Cir. 2007) (citing *Nw. Wholesale Stationers, Inc. v. Pac. Stationary & Printing Co.*, 472 U.S. 284, 294 (1985)).

Coast Runner does not allege that Kickstarter's (and the other Defendants') refusal to support Coast Runner's campaign was aimed at driving out competitors at all. To the contrary, the

FAC alleges that decision was motivated, at bottom, by a political purpose. FAC ¶¶ 14, 101. Nor does Coast Runner articulate any injury to any interest other than its own. Further, while the FAC alleges that Kickstarter and Indiegogo represent a significant part of the crowdfunding market, Coast Runner cannot plausibly allege that crowdfunding was a necessary element for its ability to compete. To the contrary, Coast Runner concedes that crowdfunding is one option for fundraising that "some" entrepreneurs choose. *Id.* ¶ 1. Coast Runner's assertion that "[c]rowdfunding [] offers a [] necessary marketing tool for [] Coast Runner [] to maintain control of their product while also quickly bringing it to market ahead of potential competitors," FAC at ¶ 4, is *ipse dixit* and defies common sense. Nothing in antitrust law entitles Coast Runner access to crowdfunding and dozens of businesses have succeeded with funding from other sources. Coast Runner was of course free to seek other forms of investment outside of crowdfunding. Indeed, apparently Coast Runner did raise funding in other ways, as the FAC indicates it had "hundreds of thousands of dollars" in investments, even absent crowdfunding campaigns. *Id.* ¶ 123.

Further, Coast Runner does not even address the potential pro-competitive effects of the alleged political boycott. However, courts in the antitrust context have routinely recognize the pro-competitive effect of companies cooperating to pursue standards related to public safety. *See, e.g., Craftsmen Limousine, Inc. v. Ford Motor Co.*, 363 F.3d 761, 776 (8th Cir. 2004) (finding "[b]ecause the alleged restraints were arguably based, at least in part, on safety concerns, they may have had some procompetitive effects"). As such, the alleged boycott is not *per se* illegal.

> 2.     Coast Runner's Allegations Also Fail Under the Rule of Reason Because it Has Not Alleged Anti-Competitive Effect or Injury to Competition.

Having determined that the alleged boycott ought not to be treated as *per se* illegal, dismissal is required under rule of reason analysis because Coast Runner failed to plead *facts* to show any anti-competitive effect or injury to competition or to the market. Further, "speculation

about anticompetitive effects is not enough" to save antitrust claims from dismissal at the pleadings stage. *Sports*, 751 F.3d at 376 (dismissing antitrust claims where plaintiff's "assertions regarding market injury are completely speculative" and complaint "focus[ed] on [the plaintiff's] own injury … because antitrust laws are designed to protect competition, not competitors"); *see also Jebaco, Inc.,* 587 F.3d at 320 (no antitrust claim where only injury was plaintiff's own).

Because Coast Runner has failed to allege facts showing liability under rule of reason analysis, its antitrust claims should be dismissed. *Sports*, 751 F.3d at 376.

### C.    Coast Runner's Antitrust Claims Also Fail Because Antitrust Law Does Not Cover Political or Ideological Boycotts Like That Alleged by Coast Runner.

The FAC alleges a political boycott, *i.e.*, that Kickstarter's alleged agreement with Indiegogo to exclude Coast Runner was motivated by an unnamed person "acting on behalf of an [unnamed, unidentified] organization opposed to gun rights," and intended to "deprive Wilson and Walliman of the resources necessary to defend their Second-Amendment-related ventures." FAC ¶¶ 79-80. But the Sherman Act does not encompass political boycotts; thus, Coast Runner's antitrust claims fail. *See, e.g.*, *Nat'l Org. for Women, Inc.*, 620 F.2d at 1309-11 (discussing historical intent of Sherman Act and confirming conduct motivated by political purposes falls outside the scope of antitrust law).

This approach makes sense because "the Sherman Act 'is aimed primarily at combinations having commercial objectives.'" *Id.* (citing *Klor's, Inc. v. Broadway-Hale Stores, Inc.*, 359 U.S. 207, 213 n.7 (1959)). Thus, to determine whether a boycott falls within the "scope" of the Sherman Act, courts consider whether the boycott is a "business combination[] with commercial objective." *Id.* (internal citations omitted). Coast Runner makes no such allegation, and thus, *even accepting Coast Runner's allegations as true* (they are not), the "boycott" Coast Runner alleges occurred falls outside the scope of antitrust law and *cannot support a claim for relief*.

15

Moreover, consistent with this construction of the Sherman Act, the Supreme Court has found that politically motivated boycotts are protected speech under the First Amendment and thus not susceptible to the chilling effects of antitrust claims such as Coast Runner's. In its landmark decision in *Claiborne*, 458 U.S. at 887–88, 914-15, the Supreme Court held that politically motivated boycotts were protected by the First Amendment in most cases. There the Court found that black citizens' "politically motivated boycott" of white merchants, which was "designed to force governmental and economic change" was not prohibited by the Sherman Act because "the nonviolent elements of [politically motivated boycotts] are entitled to the protection of the First Amendment." This was despite the fact that the political boycott in that case, like all other boycotts, was "intended" to cause "economic injury" to achieve political ends. *Id*.

In a subsequent case, *FTC v. Superior Court Trial Lawyers Ass'n*, the Supreme Court distinguished politically motivated boycotts that might have economic effects (like the boycott in *Claiborne*), from boycotts where the "undenied objective . . . was an economic advantage for those who agreed to participate." 493 U.S. 411, 426-29 (1990). In *Trial Lawyers*, a group of attorneys agreed to stop providing appointed representation to indigent defendants until the court increased the attorneys' fee rate. *Id.* The court noted that unlike the participants in the *Claiborne* boycott who "sought no special [economic] advantage for themselves," the attorneys had "a clear objective," to "economically advantage the attorney participants." *Id.* Thus, unlike the boycott in the *Claiborne* case, the attorneys' boycott was a clear violation of antitrust law. *Id.*[10]

Coast Runner alleges a boycott that, at bottom, was designed to "satisfy the Does' **political**

---

[10] The Supreme Court has recently reaffirmed the First Amendment rights of businesses to refuse to serve customers that would involve the business endorsing a viewpoint that the business finds objectionable. *See 303 Creative LLC v. Elenis,* 600 U.S. 570, 591 (2023) (rejecting rule that would require a web design company to produce a wedding website for a gay couple).

agenda" by "depriv[ing] Wilson and Walliman of the resources necessary to defend their separate Second-Amendment-related ventures both in and out of court." FAC ¶ 80 (emphasis added). Despite admitting that the Does were attempting a **political** boycott by threatening Kickstarter and Indiegogo, Coast Runner attempts to avoid the protections of *Claiborne*, by stating *ipse dixit* "[r]ather than aligning with any **purely political** motivations, this collusion protected Kickstarter and Indiegogo's financial interests by encouraging the public perception that the crowdfunding platforms were aligned with their customers' **social values**." FAC ¶ 101 (emphasis added). But in providing more detail to its allegations on amendment, Coast Runner has merely better described a textbook political boycott—here, as alleged, the Does used social pressure and risk of potential economic harm to effectuate a desired **political** outcome. And for their part, Kickstarter and Indiegogo allegedly chose to exercise the First Amendment rights of speech and free association to refuse to provide services to a business tied to products they deem inconsistent with their mission to serve their customer base.

Moreover, the FAC does not plausibly allege that the Defendants stood to gain *any* special economic benefit from refusing to work with Coast Runner, much less that the "clear objective of the [alleged] boycott [was] to economically advantage the participants." *Trial Lawyers*, 493 U.S. at 426-29. Instead, as stated in Section IV.B *supra*, there would be no logical, economic purpose for Kickstarter to spare its "chief" rival the fallout of doing business with Coast Runner. To the contrary, by suspending Coast Runner's campaign and refunding contributions that had already been made, Kickstarter lost money and the opportunity to earn additional fees from the "millions of dollars" Coast Runner anticipated its campaign would make. *See* FAC ¶¶ 6, 123. The same could be said of Indiegogo. *Id.* ¶ 14. And Launchboom refunded Coast Runner for its services. *Id.* ¶ 92. Without articulating a clear, plausible economic purpose of the boycott, Coast Runner has

failed to bring its allegations within the scope of the Sherman Act or the TFEAA.

Therefore, the FAC alleges a boycott motivated by political reasons with no special economic advantages to the participants, bringing the allegations squarely within the protections described in *Claiborne* and *Trial Lawyers*. As a result, Coast Runner has failed to state a claim against Kickstarter under the Sherman Act or the TFEAA and these claims should be dismissed.

> ### D.    Section 230 of the Communications Decency Act Further Immunizes Kickstarter from Antitrust Liability for Choosing to Remove Coast Runner.

Kickstarter's removal of Coast Runner's campaign in alleged agreement with the other Defendants is also protected from antitrust liability by Section 230 of the Communications Decency Act. Section 230 confers immunity from civil liability for a defendant who is (1) a "provider or user of an interactive computer service and (2) treated as a publisher or speaker of third-party content." *A.B. v. Salesforce, Inc.*, 123 F.4th 788, 792-93 (5th Cir. 2024); 47 U.S.C.A. § 230 (c)(2)(A). Essentially, Section 230 shields decisions that are "quintessentially related to a publisher's role" from liability, including "decisions relating to [] screening[] and deletion. . ." *Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (cleaned up).[11]

Kickstarter is a provider of a "interactive computer service." *See* 47 U.S.C. § 230(c)(1). "Interactive computer services," in short, are websites that do not draft their own content, but rather, "publish content prepared primarily by third parties." *Pickett v. InfoUSA, Inc.*, 561 F. Supp. 2d 646, 651 (E.D. Tex. 2006). Importantly, courts have previously found that Section 230 applies to crowdfunding platforms. *See GiveForward, Inc. v. Hodges*, 2015 WL 4716046, at *3-7 (D. Md.

---

[11] *Children's Health Def. v. Meta Platforms, Inc.*, 112 F.4th 742, 762 (9th Cir. 2024) (Under, Section 230 "a provider . . . may choose to restrict content it considers 'objectionable' without the threat of lawsuits."); *Lama v. Meta Platforms, Inc.*, 732 F. Supp. 3d 214, 220 (N.D.N.Y. 2024) ("The mechanisms by which an interactive computer service makes decisions regarding whether to [] remove content has no impact on whether it is entitled to immunity.").

Aug. 6, 2015) (granting summary judgment to crowdfunding website based on Section 230 immunity). This makes sense because crowdfunding platforms (like Kickstarter) publish third-party crowdfunding campaigns for others (like Coast Runner). FAC ¶ 41. Accordingly, Kickstarter satisfies the first element for Section 230 immunity.

Further, Kickstarter's (and Indiegogo's) decision to remove Coast Runner is associated with its role as a publisher of third-party content. *Salesforce,* 123 F.4th at 792-93; *see also Marshall's Locksmith Serv. Inc. v. Google, LLC*, 925 F.3d 1263, 1266 (D.C. Cir. 2019) (dismissing antitrust claims because the challenged activity was protected under Section 230). Accordingly, under Section 230, Kickstarter is immune from liability as to Coast Runner's claims because they relate to Kickstarter's decision to remove Coast Runner's campaign.

### E.    Coast Runner's Conspiracy Claim is Not a Standalone Cause of Action and Should Be Dismissed with Its Antitrust Claims.

Coast Runner's only remaining claim against Kickstarter, civil conspiracy, cannot survive dismissal if the Court dismisses Coast Runner's antitrust claims. *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 140-42 (Tex. 2019), cited by Coast Runner at Paragraph 125, explains that "civil conspiracy is a theory of vicarious liability and not an independent tort." The Fifth Circuit has further concluded that "when plaintiffs fail to state a claim for any underlying tort, their claims for civil conspiracy likewise fail." *Tummel v. Milane*, 787 F. App'x. 226, 227 (5th Cir. 2019) (citation omitted). Further, the underlying wrongful act must be alleged against each defendant and "[g]eneral allegations lumping all defendants together and failing to identify specific actions of individual defendants will not suffice to raise an inference of plausible liability." *Callier v. Nat'l United Grp., LLC*, 2021 WL 5393829, at *4 (W.D. Tex. Nov. 17, 2021).

Only Counts 1 and 2 alleging that Kickstarter engaged in a group boycott are pled against Kickstarter. Even assuming it is proper to plead civil conspiracy as a standalone cause of action,

if Counts 1 and 2 fail for the reasons stated in this Motion, so too should Coast Runner's Civil Conspiracy claim. *See* FAC ¶ 126 ("The Defendants joined together in an illegal conspiracy for the purpose of denying Coast Runner access to the marketplace . . . .").

Further, Coast Runner does not allege Count 3 (Tortious Interference) or Count 4 (Business Disparagement) against Kickstarter, instead only pleading these claims against the Does. FAC ¶¶ 39-40. However, Coast Runner includes in its conspiracy cause of action that "[e]ach [Defendant] took an affirmative action toward the commission of [] tortious interference with Coast Runner's economic relationships, and disparagement." FAC ¶ 126. This "[g]eneral allegation[] lumping all [D]efendants together and failing to identify specific actions" is not enough "to raise an inference of plausible liability against any individual defendant" for Coast Runner's business disparagement or tortious interference claims. *See Callier*, 2021 WL 5393829, at *4. Put differently, absent a finding that Counts 1 and 2 survive dismissal, Coast Runner could not keep Kickstarter as a Defendant based on this vague allegation of conspiracy alone.[12]

For the reasons stated above, Coast Runner's conspiracy claim should be dismissed.

## V.    CONCLUSION

For the reasons stated above, Defendant Kickstarter respectfully requests that this Court dismiss Coast Runner's FAC as alleged against Kickstarter pursuant to Rule 12(b)(6).

---

[12] To the extent this Court were to disagree, the First Amendment protections stated in *Claiborne* have been extended to likewise protect against liability for tortious interference and business disparagement where the conduct is politically or ideologically motivated. *See, e.g., Cousins v. Goodier*, 283 A.3d 1140, 1162 (Del. 2022) (noting "overwhelmingly, courts that have considered the interaction of defamation and tortious interference have" found that to "h[old] [defendants] liable for tortious interference based upon [] alleged [politically motivated] activities would infringe upon the [defendants] right to free speech under the First Amendment").

DATED: April 8, 2025                    Respectfully submitted,


*/s/ Ethan Joel Levinton*
Jeremy A. Fielding, P.C.
Texas Bar No. 24040895
jeremy.fielding@kirkland.com
Olivia Adendorff, P.C.
Texas Bar No. 24069994
Olivia.adendorff@kirkland.com
Ethan Joel Levinton (*pro hac vice*)
Texas Bar No. 24127309
ethan.levinton@kirkland.com
**KIRKLAND & ELLIS LLP**
4550 Travis Street
Dallas, Texas 75205
Telephone: (214) 972-1784
Facsimile: (214) 972-1771
4550 Travis Street
Dallas, Texas 75205
(214) 972-1784

Allison W. Buchner (*pro hac vice*)
allison.buchner@kirkland.com
**KIRKLAND & ELLIS LLP**
2049 Century Park East
Suite 3700
Los Angeles, California 90067
(213) 680-8400

*Counsel for Kickstarter, PCB*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2025, a true and correct copy of the foregoing document was served upon all parties of record via E-File in accordance with Rule 21a of the Texas Rules of Civil Procedure:

*/s/ Ethan Joel Levinton*
Ethan Joel Levinton