# UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF TEXAS
# MIDLAND/ODESSA DIVISION

|  |  |
|---|---|
| **COAST RUNNER, INC.**,<br>Plaintiff, |  |
| vs. | Case No. 7:25-cv-00396-DC-RCG |
| **KICKSTARTER, PBC; INDIEGOGO, INC.; LABEL CREATIVE, LLC; JOHN DOES #1 AND #2**,<br>Defendants. |  |

## PLAINTIFF'S STATEMENT OF APPEAL AND OBJECTIONS TO ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO SEVER AND TRANSFER VENUE

JUDD E. STONE II
CHRISTOPHER D. HILTON
ARI CUENIN
CAROLINE MERIDETH
CODY C. COLL
**STONE HILTON PLLC**
600 Congress Ave.
Suite 2350
Austin, TX 78701
Telephone: (737) 465-3897
judd@stonehilton.com
chris@stonehilton.com
ari@stonehilton.com
caroline@stonehilton.com
cody@stonehilton.com

# TABLE OF CONTENTS

Table of Contents ............................................................................................................... i

Table of Authorities ......................................................................................................... ii

Introduction ....................................................................................................................... 1

Background and Allegations ............................................................................................ 3

I.    Defendants Collusively and Unlawfully Excluded Plaintiff from Crowdfunding for Its Innovative Industrial Milling Machine. .................................................................. 3

II.   The Magistrate Judge Grants Indiegogo's Motion to Transfer and Immediately Transfers the Case Before Plaintiff Could Exercise Its Statutory Right of Review. ......................... 5

III.  The Northern District of California Returns the Case to the Western District of Texas for a Ruling on Objections to the Magistrate Judge's Transfer Order. .................................. 6

Standard of Review ........................................................................................................... 7

Argument ............................................................................................................................ 7

I.    Transfer Was Contrary to Law as No Forum-Selection Clause Applies to This Case. ...... 8

II.   The Transfer Order Is Contrary to Law Because Indiegogo's FSC Is not Mandatory. ..... 13

III.  The Transfer Order Is Contrary to Law Because Transfer to the Northern District of California Was Also Improper in View of Indiegogo's Asserted Arbitration Clause. ...... 14

IV.   Plaintiff Also Objects to the Magistrate Judge's Application of Section 1404(a) Because the Transfer Factors Clearly Favor Texas. ........................................................................ 15

Prayer ............................................................................................................................... 20

Certificate of Compliance ............................................................................................... 21

Certificate of Service ...................................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*All Voice Devs. US, LLC v. Microsoft Corp.*,
  2010 WL 11468302 (E.D. Tex. Apr. 8, 2010) ........................................................................ 20

*Allianz Global Investors GmbH v. Bank of America Corp.*,
  463 F. Supp. 3d 409 (S.D.N.Y. 2020) .................................................................................... 12

*Animal Film, LLC v. D.E.J. Prods., Inc.*,
  123 Cal. Rptr. 3d 72 (Cal. Ct. App. 2011) ............................................................................ 13

*Atl. Marine Const. Co. v. U.S. Dist. Ct.*,
  571 U.S. 49 (2013) ............................................................................................................... 7, 8

*AXIS Reinsurance Co. v. Northrop Grumman Corp.*,
  2018 WL 3326670 (C.D. Cal. Mar. 27, 2018) ....................................................................... 15

*Bancomer, S.A. v. Superior Court*,
  52 Cal. Rptr. 2d 435 (Cal. Ct. App. 1996) .............................................................................. 9

*Bollinger Shipyards Lockport v. Huntington Ingalls Inc.*,
  2015 WL 65298 (E.D. La. Jan. 5, 2015) ................................................................................ 15

*Brigida v. Valk*,
  2019 WL 13175535 (N.D. Tex. Dec. 18, 2019) ....................................................................... 5

*Clark v. VIP Petcare, LLC*,
  2023 WL 8459928 (N.D. Cal. Dec. 6, 2023) .......................................................................... 18

*Contra Bio World Merch., Inc. v. Interactive Bus. Info. Sys., Inc.*,
  2020 WL 6047605 (N.D. Tex. Oct. 9, 2020) .......................................................................... 16

*CZ Servs., Inc. v. Express Scripts Holding Co.*,
  2018 WL 3972030 (N.D. Cal. Aug. 20, 2018) ........................................................................ 11

*Decker Coal Co. v. Commonwealth Edison Co.*,
  805 F.2d 834 (9th Cir. 1986) ........................................................................................... 18, 19

*Def. Distributed v. Bruck*,
  30 F.4th 414 (5th Cir. 2022) ................................................................................... 17, 18, 19

*Done! Ventures LLC v. Gen. Elec. Co.*,
  2011 WL 13217221 (C.D. Cal. Aug. 5, 2011) ........................................................................ 16

*Guilbeau v. Schlumberger Tech. Corp.*,
  719 F. Supp. 3d 702 (W.D. Tex. 2024) .................................................................................... 7

*Ha Thi Le v. Lease Fin. Grp.*,
  2017 WL 2915488 (E.D. La. May 9, 2017) ............................................................................ 16

*Henry v. Cent. Freight Lines, Inc.*,
  2017 WL 4517836 (E.D. Cal. Oct. 10, 2017) ........................................................................... 9

*Imation Corp. v. Quantum Corp.*,
   2002 WL 385550 (D. Minn. Mar. 8, 2002) ....................................................... 12, 13

*In re Bavaria Yachts USA, LLLP*,
   575 B.R. 540 (Bankr. N.D. Ga. 2017) ........................................................... 15, 16

*In re Clarke*,
   94 F.4th 502 (5th Cir. 2024) .......................................................................... 19

*In re Fisher*,
   433 S.W.3d 523 (Tex. 2014) .......................................................................... 13

*In re Google LLC*,
   2021 WL 4427899 (Fed. Cir. Sept. 27, 2021) ............................................... 17

*In re Hoffmann-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009) ..................................................................... 19

*In re Orange, S.A.*,
   818 F.3d 956 (9th Cir. 2016) ........................................................................... 9

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
   528 F. Supp. 2d 1358 (J.P.M.L. 2007) ......................................................... 16

*In re Walmart Inc.*,
   2022 WL 1572272 (Tex. App.—Texarkana May 19, 2022, no pet.) .............. 9

*In re Yahoo! Inc.*,
   313 F. App'x 722 (5th Cir. 2009) ................................................................. 11

*Lightbeam Health Sols. Inc. v. Tidewater Physicians Multispeciality Grp.*,
   2017 WL 3382458 (N.D. Tex. Aug. 7, 2017) ............................................... 18

*Manetti–Farrow, Inc. v. Gucci America Inc.*,
   858 F.2d 509 (9th Cir. 1988) ........................................................................... 9

*MM Steel, L.P. v. JSW Steel (USA) Inc.*,
   806 F.3d 835 (5th Cir. 2015) ...................................................................... 5, 10

*My Cafe-CCC, Ltd. v. Lunchstop, Inc.*,
   107 S.W.3d 860 (Tex. App.— Dallas 2003, no pet.) ..................................... 14

*Pilepro, LLC v. Chang*,
   152 F. Supp. 3d 659 (W.D. Tex. 2016),
   *aff'd sub nom PilePro, LLC v. Heindl*, 676 F. App'x 341 (5th Cir. 2017) ............. 10

*Primary Color Sys. Corp. v. Agfa Corp.*,
   2017 WL 8220729 (C.D. Cal. July 13, 2017) ............................................... 17

*Ramsay v. Tex. Trading Co.*,
   254 S.W.3d 620 (Tex. App.—Texarkana 2008, pet. denied) ......................... 14

*Ravelo Monegro v. Rosa*,
   211 F.3d 509 (9th Cir. 2000) ........................................................................ 17

*S.M.R Innovations LTD v. Apple Inc.*,
   756 F. Supp. 3d 453 (W.D. Tex. 2024) ........................................................ 15

*Sabal Ltd. v. Deutche Bank AG*,
    209 F. Supp. 3d 907 (W.D. Tex. 2016) ................................................................. 9

*Sandquist v. Lebo Auto., Inc.*,
    376 P.3d 506 (Cal. 2016) ..................................................................................... 14

*Siragusa v. Arnold*,
    2013 WL 5462286 (N.D. Tex. Sept. 16, 2013) .................................................... 17

*Starlight Ridge S. Homeowners Assn. v. Hunter-Bloor*,
    99 Cal. Rptr. 3d 20 (Cal. Ct. App. 2009) ............................................................ 14

*Sw. Intelecom, Inc. v. Hotel Networks Corp.*,
    997 S.W.2d 322 (Tex. App.—Austin 1999, pet. denied) ...................................... 13

*Tenn. Walking Horse Nat'l Celebration Ass'n v. United States Dep't of Agric.*,
    2025 WL 736801 (N.D. Tex. Jan. 13, 2025) ....................................................... 18

*Tricon Precast, Ltd. v. Easi Set Indus., Inc.*,
    395 F. Supp. 3d 871 (S.D. Tex. 2019) ................................................................. 12

*United States v. Planned Parenthood Fed'n of Am.*,
    2022 WL 19006361 (N.D. Tex. Sep. 20, 2022) ................................................... 19

*W. Mktg., Inc. v. AEG Petroleum, LLC*,
    616 S.W.3d 903 (Tex. App.—Amarillo 2021) ..................................................... 10

*Walters v. Famous Transps., Inc.*,
    488 F. Supp. 3d 930 (N.D. Cal. 2020) ................................................................. 19

*Weber v. PACT XPP Techs., AG*,
    811 F.3d 758, 768 (5th Cir. 2016) .......................................................................... 7

*Webseed, Inc. v. Dept. of State*,
    2025 WL 996458 (W.D. Tex. Feb. 24, 2025) ...................................................... 11

*White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*,
    407 F. Supp. 3d 931 (S.D. Cal. 2019) ................................................................... 7

*Zichichi v. Jefferson Ambulatory Surgery Center, LLC*,
    2007 WL 3353304 (E.D. La. Nov. 7, 2007) ........................................................ 10

## STATUTES

15 U.S.C. § 22 ....................................................................................................... 16

28 U.S.C. § 1404(a) ................................................................................................. 7

## OTHER AUTHORITIES

WRIGHT & MILLER, 15 FED. PRAC. & PROC. JURIS. § 3845 (4th ed.)...................... 16, 19

## RULES

Appx. C. Rule 4(a) ................................................................................................ 7

FED. R. CIV. P. 72(a) ............................................................................................ 7

## INTRODUCTION

Plaintiff objects to the Magistrate Judge's ruling on transfer. On Thursday, August 14, 2025, United States Magistrate Judge Griffin granted in part and denied in part Defendant Indiegogo, Inc.'s Motion to Sever and Transfer Venue (ECF 16), denied Defendant Kickstarter, PBC and Defendant Label Creative, LLC's similar motions (ECF 19, 39), and ordered this action transferred to the Northern District of California's San Francisco Division. ECF 58. Judge Griffin ruled on those motions pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P. 72(a), and Appendix C to the Local Rules of the Western District of Texas.[1]

The Clerk of Court immediately and prematurely transferred the case. *See* Docket Text Entry of August 14, 2025; *Coast Runner, Inc. v. Kickstarter PBC*, No. 3:25-cv-06900-JCS (N.D. Cal.) (case opened August 14, 2025). But Plaintiff had a statutory and constitutional right to object to and appeal that ruling by filing objections for determination by a United States District Judge of this Court. Thus, the case should not have been transferred before expiration of the deadline to file objections under Rule 72(a) and Appx. C Rule 4(a). Plaintiff sought a stay from this Court pending a ruling on such objections, however this Court denied Plaintiff's request as moot as the case had already been transferred to the Northern District of California. Text Order of Aug. 19, 2025, *Coast Runner, Inc. v. Kickstarter PBC*, No. 7:24-CV-00326 (W.D. Tex.). Plaintiff subsequently moved for relief and objected to the Magistrate Judge's transfer ruling in the Northern District of California, ECF 70, which prompted the District Judge in the Northern District of California to return the case to this Court for determination of Plaintiff's objections to transfer, ECF 91. As soon as the case was reopened in this district, Plaintiff moved to stay the Magistrate Judge's order pending its appeal and objections, ECF 94, and now files its written statement of

---

[1] Cited hereinafter as "Appx. C Rule [number]."

appeal and its objections, respectfully requesting that the Court sustain the objections to the Magistrate Judge's order and retain the case in this district because that order is clearly erroneous.

Plaintiff, an Austin, Texas, based company with key personnel in Midland, Texas, brought this antitrust suit in the Western District of Texas to combat Defendants' anticompetitive behavior. Defendants Indiegogo, Kickstarter, and Label Creative conspired to exclude Plaintiff from crucial access to crowdfunding platforms to raise money for a successful and innovative CNC milling machine that promised significant benefit to oil and gas operations in the Permian Basin near Midland. As explained in the attached declaration of Pablo Diaz, Exh. A, significant events concerning the development and execution of the crowdfunding campaigns were performed in Midland. But because Indiegogo's terms of service contained a forum-selection clause ostensibly mandating venue in San Francisco, Magistrate Judge Griffin granted Indiegogo's motion to transfer the case to the Northern District of California. Plaintiff now seeks relief from this Court to overrule the Magistrate Judge's transfer ruling.

In short, Defendants unlawfully conspired to exclude Plaintiff from the crowdfunding market. Their collusive, anti-competitive actions violate the Sherman Act and the Texas Free Enterprise and Antitrust Act. Neither the existence nor validity of any contract between Coast Runner and any Defendant has any impact on or relation to Coast Runner's claims. The claims against Defendants do not arise out of agreements with those entities or turn on the interpretation or enforcement of any contract. Thus, no forum-selection clause governs venue in this suit. Because the forum-selection clauses are inapplicable—and because the Indiegogo forum-selection clause could not justify transfer as to all Defendants in any event—the case should be retained in the Western District of Texas.

**BACKGROUND AND ALLEGATIONS**[2]

I.    **Defendants Collusively and Unlawfully Excluded Plaintiff from Crowdfunding for Its Innovative Industrial Milling Machine.**

For high-tech hardware products, the crowdfunding industry is a functional duopoly: Defendants Kickstarter and Indiegogo control virtually the entire market. The Defendant duopolists here engaged in collusive, anticompetitive behavior to the disadvantage and economic detriment of Plaintiff and its founders. Through their dominance in the relevant market, the duopolists enticed and convinced LaunchBoom (a d/b/a of Defendant Label Creative, LLC), a crowdfunding consulting company, to participate in their scheme.

Plaintiff and its founders, Cody Wilson and Garret Walliman, spent two years developing the CR-1, a general-purpose desktop computer number controlled (CNC) milling machine. They spent over six months and hundreds of thousands of dollars preparing for a crowdfunding campaign to launch their product to the market, raise capital, and prove the viability of Coast Runner as an independent enterprise. Although Coast Runner is based in Austin, personnel based in Midland did important work to design those crowdfunding campaigns. Exh. A ¶¶ 4, 6-8.

The CR-1 was a vast improvement on Wilson and Walliman's previous venture: a special purpose milling machine developed through Wilson's company, Defense Distributed. Unlike the special-purpose Ghost Gunner, which was developed specifically for milling firearm parts, the CR-1 was designed with field engineers, repair technicians, and all-purpose at-home makers in mind. The CR-1 was designed from the ground up as a new product: it included an all-new power supply, purpose-designed circuit boards, innovative dampener technology and fixturing, a from-scratch software platform, and numerous other improvements. The Biden administration's

---

[2] Facts stated in this section are taken from Plaintiff's Original Complaint, ECF 1, and the Diaz Declaration, Exh. A, unless otherwise noted.

Department of Commerce gave the CR-1 a neutral export control classification number, reflecting that the device was not designed to be—and is not—a firearms manufacturing device.

After months of preparation, disclosures, marketing, testing, and investment, the CR-1 launched on Kickstarter on February 27, 2024. Over $500,000 in pledged dollars flowed in during the first few hours. Total 30-day campaign funds were projected to be millions of dollars. Then it stopped. Kickstarter suddenly and inexplicably ended the campaign, stripping Plaintiff of any benefit. Knowing Indiegogo had previously expressed interest in hosting the CR-1, Plaintiff turned to the other player in the duopoly. Indiegogo agreed to set up a replacement campaign practically overnight, committing to a whole-of-company effort and repeatedly reassuring Wilson and Walliman that it would not pull the rug out from under the CR-1 like Kickstarter had. Indiegogo's campaign launched on February 29 to resounding success. Then it stopped.

That summer, Plaintiff learned why: Wilson and Walliman learned through industry connections that the duopoly's highest leaders communicated directly with each other and with LaunchBoom, agreeing to prevent Plaintiff's participation in the market they dominate and control. Kickstarter and Indiegogo, because of threatened backlash against Plaintiff's founders' separate, firearms-related ventures, illegally conspired to exclude Plaintiff and the CR-1 out of the crowdfunding market, leaving that uniquely beneficial source of funding inaccessible to Plaintiff and harming the market for desktop milling machines. Kickstarter brought LaunchBoom into the scheme, and LaunchBoom promptly withdrew from its relationship with Plaintiff, leaving Plaintiff to navigate the aftermath alone. As a result, Plaintiff has been deprived of millions of dollars of revenue, an infusion of capital that Plaintiff could have generated without surrendering equity ownership and without taking on debt, all while proving a market for the CR-1 and generating industry buzz around the new product. When crowdfunding works, everyone wins. The

4

entrepreneur receives capital and publicity; the "backers," who pledge funds, are the first to enjoy cutting-edge products; and the platform, such as Indiegogo or Kickstarter, takes a commission. And LaunchBoom would have earned sizeable consulting fees, but as part of its performative show of distaste for Plaintiff, it refunded every dollar it made from the CR-1 project. Here, everyone—except the illegally colluding conspiracy—instead lost.

Defendants thus unlawfully "engaged in a conspiracy that restrained trade in a particular market." *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 843 (5th Cir. 2015) (defining elements of a section 1 Sherman Act claim) (cleaned up). Plaintiff sued Kickstarter, Indiegogo, and LaunchBoom. Kickstarter and Indiegogo moved to dismiss. ECF 17, 18. Indiegogo also has moved to transfer Plaintiff's claims to the Northern District of California or to compel arbitration, both under its terms of service. ECF 16. Kickstarter moved pursuant to its own terms of service, to transfer the case to the Southern District of New York or, alternatively, to sever the claims against it; it agreed, however, to consent to jurisdiction in the Northern District of California otherwise. ECF 19. LaunchBoom moved to transfer the case to the Southern District of California or, alternatively, to sever the claims against it as well. ECF 39.

## II.    The Magistrate Judge Grants Indiegogo's Motion to Transfer and Immediately Transfers the Case Before Plaintiff Could Exercise Its Statutory Right of Review.

On August 14, 2025, Judge Griffin entered an order granting in part and denying in part the motions to sever and transfer venue. ECF 58. Judge Griffin granted Indiegogo's motion to transfer and denied the remaining motions in all other respects in view of that ruling. The Magistrate Judge found first that severance was inappropriate in view of the overlap among claims and parties and the five-factor test articulated in *Brigida v. Valk*, 2019 WL 13175535, at *2 (N.D. Tex. Dec. 18, 2019). And because the Magistrate Judge found Indiegogo's forum-selection clause mandatory and binding—and because litigating in a California federal forum was not incompatible

with Kickstarter and Launch Boom's respective positions—the Court granted Indiegogo's motion to transfer.

Before Plaintiff could object to the ruling, however, the clerk of court immediately transferred the case to the Northern District of California. Although Plaintiff promptly moved for a stay in the Western District of Texas pending a ruling on Plaintiff's objections, ECF 59, No. 7:24-CV-00326 (W.D. Tex.), the clerk of court for the Northern District of California opened and docketed this case on August 15, 2025, ECF 59. Because the case had already been docketed, this Court denied Plaintiff's motion for a stay as moot. ECF 60, 7:24-CV-00326 (W.D. Tex.).

## III.    The Northern District of California Returns the Case to the Western District of Texas for a Ruling on Objections to the Magistrate Judge's Transfer Order.

On August 28, 2025, Plaintiff promptly filed in the Northern District of California a set of objections to the transfer order and alternative request for reconsideration or re-transfer to the Western District of Texas under 28 U.S.C. § 1404(a) in its own right. ECF 70.[3] The district judge in the Northern District of California determined that transfer had been premature and entered an order accordingly transferring this case back to the Western District of Texas. *See* ECF 91. The Northern District of California district judge explained that, because it did not appear that the parties had consented to proceed before a magistrate judge for all purposes in the Western District of Texas, and because Plaintiff had intended to object to Judge Griffin's transfer order, it would be inappropriate for the Northern District of California to retain the case. *See id.* Plaintiff

---

[3] Because this case was transferred to the Northern District of California before Plaintiff had any opportunity to file objections to Judge Griffin's order, Plaintiff initially moved for relief from the Northern District of California within the 14-day period provided by 28 U.S.C. § 636(b)(l)(A). After the court in the Northern District of California transferred the case back to this Court for resolution of Plaintiff's then-forthcoming objections to Judge Griffin's order, Plaintiff promptly moved this Court for a stay and notified the Court that objections would be filed no later than September 10, 2025—well within 14 days of the Northern District of California's Transfer Order. *See* ECF 91. This Court then granted a stay and ordered that Plaintiff's objections be filed by September 24, 2025. ECF 95.

immediately moved this Court for an order staying the case pending this Court's resolution of Plaintiff's timely objections to Judge Griffin's transfer ruling, and further notified the Court of Plaintiff's intention to file objections. ECF 94. Plaintiff thus respectfully now submits these objections to the Magistrate Judge's transfer order.

**STANDARD OF REVIEW**

When a magistrate judge rules on a pretrial motion under section 636(b)(1)(A), a district judge must "reconsider" the ruling "where it has been shown that the Magistrate Judge's order is clearly erroneous or contrary to law." Thus, "[a] party may serve and file objections to the [magistrate judge's] order within 14 days after being served with a copy." FED. R. CIV. P. 72(a); Appx. C. Rule 4(a). Under these rules, the party against whom a ruling is made must be given the opportunity to object to and appeal from the Magistrate Judge's ruling and to obtain a decision from a United States District Judge of this Court. As relevant here, "the legal conclusions of the magistrate judge are reviewable de novo, and the district judge reverses if the magistrate judge erred in some respect in his legal conclusions." *Guilbeau v. Schlumberger Tech. Corp.*, 719 F. Supp. 3d 702, 710 (W.D. Tex. 2024) (cleaned up).

**ARGUMENT**

Transfer is permitted to "any other district or division . . . to which all parties have consented." 28 U.S.C. § 1404(a). This statute "provides a mechanism for enforcement of forum-selection clauses that point to a particular federal district." *Atl. Marine Const. Co. v. U.S. Dist. Ct.*, 571 U.S. 49, 59 (2013). A forum-selection clause applies only if the clause is mandatory, is valid, and covers the plaintiff's claims. *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768, 763 (5th Cir. 2016); *accord White Knight Yacht LLC v. Certain Lloyds at Lloyd's London*, 407 F. Supp. 3d 931, 943 (S.D. Cal. 2019). A party opposing enforcement may show that the "public interest" weighs against transfer. *Atl. Marine*, 571 U.S. at 64.

The transfer order is contrary to law for four reasons. First, no forum selection clause applies to this case. Plaintiff objects that the forum-selection clause does not apply because Plaintiff's antitrust suit does not concern any terms or agreements between Plaintiff and any Defendant nor does this suit require interpretation or enforcement of any contract. The Magistrate Judge erred in concluding otherwise. Second, the relevant contractual language does not mandate that claims may only be litigated in the Northern District of California. Rather, it merely waives any defense based on personal jurisdiction in that district. Third, the forum selection clause in Indiegogo's terms applies only to those disputes that are not subject to arbitration. In other words, if the Indiegogo clause required arbitration, then the case should not have been transferred at all. But the Magistrate Judge did not rule on the threshold issue of arbitrability. And fourth, the public- and private-interest factors for deciding transfer motions do not support a transfer and, instead, plainly show the case should remain in this district.

## I.     Transfer Was Contrary to Law as No Forum-Selection Clause Applies to This Case.

As an initial matter, although section 1404(a) can be the proper vehicle to enforce a forum-selection clause when one applies, *Atl. Marine*, 571 U.S. at 59, none of the defendants' respective forum-selection clauses apply here. The Indiegogo forum-selection clause purportedly arises from an "AGREEMENT TO ARBITRATION," which ostensibly applies to "any and all disputes between us, including but not limited to claims arising out of or relating to any aspect of the relationship between us"—provided that "Legal Disputes *Not Subject to Arbitration* Will Be Handled In San Francisco, CA and Subject to California Law." ECF 16 at 2-3 (emphasis added). The Kickstarter forum-selection clause directs a New York forum only for "any claim, action, lawsuit or proceeding of any kind, at law or in equity, arising out of or relating to these Terms or your use or non-use of Kickstarter." ECF 19 at 3. And LaunchBoom's forum-selection clause governs "claims related to th[e LaunchBoom Accelerator Consulting Agreement]," and claims

"arising out of the subject matter of" that agreement. ECF 39 at 2. This language does not encompass Plaintiff's antitrust or civil conspiracy claims, which involve illegal collusion *between and among the Defendants* and have nothing to do with a forum-selection clause, and which necessitate neither reference to, interpretation of, nor enforcement of any portion of such contracts.

The Indiegogo Terms select California law for their construction, so California law may dictate the scope of that clause. *See Sabal Ltd. v. Deutche Bank AG*, 209 F. Supp. 3d 907, 918 (W.D. Tex. 2016) (applying Texas choice-of-law rules, which "give[] effect to choice of law clauses regarding construction of a contract" (citation omitted)).[4] "Statutory claims fall within [an FSC's] scope when the claims are inextricably intertwined with the construction and enforcement of the parties' agreement." *Henry v. Cent. Freight Lines, Inc.*, 2017 WL 4517836, at *2 (E.D. Cal. Oct. 10, 2017) (cleaned up). Further, as the Ninth Circuit has explained, whether an FSC applies to a tort claim "depend[s] on whether resolution of the claims relat[e] to interpretation of the contract." *In re Orange, S.A.*, 818 F.3d 956, 962 (9th Cir. 2016) (quoting *Manetti–Farrow, Inc. v. Gucci America Inc.*, 858 F.2d 509, 514 (9th Cir. 1988)); *see also Bancomer, S.A. v. Superior Court*, 52 Cal. Rptr. 2d 435, 442 (Cal. Ct. App. 1996) (reciting the same principle under California law).[5] As shown below, none of Plaintiff's claims are governed by the FSCs, as those claims do not require this Court to examine any portion of any contract.

---

[4] Plaintiff contests that California law applies to any aspect of this litigation and reserves its arguments in that respect, however the Court need not resolve that issue to resolve the present objections.

[5] Texas law is essentially the same. Texas courts have explained that an FSC controls only "where a party would have no basis to complain but for the agreement." *In re Walmart Inc.*, 2022 WL 1572272, at *5 (Tex. App.—Texarkana May 19, 2022, no pet.) (cleaned up). Thus, when "the facts alleged in support of the claim stand alone, are completely independent of the contract, and the claim could be maintained without reference to the contract," an FSC "should be denied force." *Id.* (cleaned up).

A Sherman Act section 1 claim requires the plaintiff to "show that the defendants (1) engaged in a conspiracy (2) that restrained trade (3) in a particular market." *MM Steel*, 806 F.3d at 843. Texas's parallel statute "requires proof of 1) a contract, combination, or conspiracy, 2) which is unreasonable, and 3) has an adverse effect on competition in the relevant market." *W. Mktg., Inc. v. AEG Petroleum, LLC*, 616 S.W.3d 903, 915 (Tex. App.—Amarillo 2021), *modified on reh'g*, 621 S.W.3d 88 (2021, pet. denied). Finally, the "elements of civil conspiracy in Texas are: '(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds of the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result.'" *Pilepro, LLC v. Chang*, 152 F. Supp. 3d 659, 678 (W.D. Tex. 2016), *aff'd sub nom PilePro, LLC v. Heindl*, 676 F. App'x 341 (5th Cir. 2017) (citation omitted).

None of these claims require reference to or interpretation of any contract. In other words, no part of the terms of service containing Defendants' respective forum-selection clauses is intertwined with Plaintiff's claims. This antitrust case does not involve interpreting or applying the terms of any agreement with Indiegogo, Kickstarter, or LaunchBoom. Plaintiff's choice of forum—the Western District of Texas—properly invoked federal venue rules, and the Magistrate Judge did not conclude otherwise. But for the Magistrate Judge's erroneous application of an inapplicable forum-selection clause, this case would rightfully be adjudicated in the Western District of Texas. Plaintiff's choice of forum should thus be given due consideration.

By way of example, in *Zichichi v. Jefferson Ambulatory Surgery Center, LLC*, the court held that a conversion claim was subject to a forum selection clause because the plaintiff had "to establish his rights arising out of the agreement" to prove his claim. 2007 WL 3353304, at *6 (E.D. La. Nov. 7, 2007). On the other hand, that plaintiff's defamation claim was outside the scope of the contract because "plaintiff need not assert any rights or duties under the contract." *Id.* at *7.

This case is just like the latter. *See also CZ Servs., Inc. v. Express Scripts Holding Co.*, 2018 WL 3972030, at *2-3 (N.D. Cal. Aug. 20, 2018). Because Plaintiff's claims do not depend on and are not intertwined with the Agreement or the Terms or their interpretation or enforcement, and because Plaintiff need not assert any rights under the Agreement or Terms, the Court should deny LaunchBoom's motion. *See In re Yahoo! Inc.*, 313 F. App'x 722, 723 (5th Cir. 2009) (affirming denial of transfer when "the claims do not depend on the contractual relationship between" the parties, "do not require interpretation of" the contract, and "involve different operative facts than" a breach of contract claim).

Judge Howell's analysis in *Webseed, Inc. v. Dept. of State*, 2025 WL 996458 (W.D. Tex. Feb. 24, 2025), does not change this analysis. There, the plaintiffs alleged a scheme by which their content, posted to various social media platforms, was censored. *Id.* at *1. Those plaintiffs could never have posted on those platforms without agreeing to the platforms' terms. In other words, the defendants' actions against the plaintiff's content there—the dispositive question—could not have existed absent the contract. Although Judge Howell rejected the plaintiffs' argument that the "conspiratorial web . . . has absolutely nothing to do with the ordinary interactive computer services contemplated by [the defendants' terms of service]," he did so because, fundamentally, the claims "spr[ung] from [the p]laintiffs' use of their [social media] accounts," *id.* at *5.

To reiterate: the operative facts here, and thus the claims asserted, do not depend on the existence of any contract and do not spring out of Plaintiff's use or nonuse of the crowdfunding platforms. They spring solely from Defendants' illegal collusion against competition. Although Defendants initially allowed Plaintiff to launch the later-terminated Kickstarter and Indiegogo campaigns, they could just as easily have colluded to exclude Plaintiff before those campaigns began. The facts that establish liability would be the same had they done so. That simple

counterfactual highlights and explains why the contracts between Plaintiff and Defendants are irrelevant to Plaintiff's claims and why, therefore, no FSC applies to those claims.

On the other hand, *Allianz Global Investors GmbH v. Bank of America Corp.*, 463 F. Supp. 3d 409 (S.D.N.Y. 2020), is instructive. There, the plaintiffs accused the defendants of violating the Sherman Act because they conspired to manipulate benchmark rates on the foreign exchange market, which caused injury through "inflate[d] bid-ask spreads." *Id.* at 416. *Allianz* is analogous to this case because in both, the "Plaintiffs' claims do not depend on the existence of a contractual relationship between the parties." *id.* at 437 (cleaned up), and therefore both cases' FSCs do not apply. As that court put it: "Although the terms 'related to' and 'in connection to' may be broader than the term 'arising out of,' [even] they do not extend to 'any dispute between the parties.'" *Id.* (citation omitted). Similarly, the Southern District of Texas has analyzed an analogous case and agreed that antitrust claims independent of a contract do not fall within an FSC, even when it uses expansive, "related to" language. *See Tricon Precast, Ltd. v. Easi Set Indus., Inc.*, 395 F. Supp. 3d 871, 881 (S.D. Tex. 2019) (antitrust claims did not have "sufficient logical or causal connection to the [contract] for its [FSC] to govern th[e] litigation.").

At bottom, and as described above, even to the extent that the Terms may "relate" to some of Plaintiff's allegations, that is not enough. *Imation Corp. v. Quantum Corp.*, 2002 WL 385550, at *3-5 (D. Minn. Mar. 8, 2002). Defendants may argue that, as in *Imation*, some of the allegations here "could state a claim for breach." *Id.* at *5. But Plaintiff has not accused any Defendant of any breach. And as the *Imation* court correctly concluded, the antitrust claims at issue "involve much more than a simple breach" and Plaintiff is not merely "trying to evade the forum selection clause by alleging Sherman Act violations." *Id.* Because "[t]he antitrust allegations do not ultimately depend on the existence of [the contracts], the resolution of the antitrust violations do not relate to

12

the interpretation of [the contracts], and the antitrust allegations do not involve the same operative facts as a parallel claim for breach of contract," the Court should decline to transfer this case or any part of it. *Id.*

## II.    The Transfer Order Is Contrary to Law Because Indiegogo's FSC Is not Mandatory.

Furthermore, the Magistrate Judge erred because Indiegogo's forum-selection clause is not mandatory. *Contra* ECF 58 at 8-9. Neither the header nor the body affirmatively requires litigation in the Northern District of California. The key heading language—"will be handled in San Francisco"—is neither mandatory nor exclusive. If a clause "does not expressly mandate litigation exclusively in a particular forum," then it is permissive only. *Animal Film, LLC v. D.E.J. Prods., Inc.*, 123 Cal. Rptr. 3d 72, 76 (Cal. Ct. App. 2011). Thus, California law requires "exclusivity" language. *Id.* at 76-77. California courts have only enforced forum selection clauses as mandatory when they use words and phrases such as "exclusive jurisdiction," or require litigation "only in" a particular court. *Id.* Texas law is similar. A provision is permissive unless it expressly prohibits litigation in other jurisdictions or expressly provides exclusive jurisdiction. *Sw. Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 325 (Tex. App.—Austin 1999, pet. denied). A provision is mandatory when it includes a promise "not to bring any proceeding" in "any other court." *In re Fisher*, 433 S.W.3d 523, 532 (Tex. 2014). Here, the header says disputes "will" be litigated in San Francisco without expressly excluding other fora or granting exclusive jurisdiction. No clear language expresses that San Francisco is the only forum allowed, and no clear language establishes a covenant not to bring litigation in another forum.

The clause's permissive nature is manifest when the heading and the substantive provision are read together. The latter provides only that the parties "agree to submit to the personal jurisdiction of" courts in San Francisco, a clause that does no more than waive objections to personal jurisdiction. *See e.g.*, *Animal Film*, 123 Cal. Rptr. 3d at 76; *Ramsay v. Tex. Trading Co.*,

254 S.W.3d 620, 629-30 (Tex. App.—Texarkana 2008, pet. denied). Thus, the provision is a personal jurisdiction waiver and at most a permissive forum selection clause. Such language never mandates venue. *Starlight Ridge S. Homeowners Assn. v. Hunter-Bloor*, 99 Cal. Rptr. 3d 20, 25 (Cal. Ct. App. 2009); *My Cafe-CCC, Ltd. v. Lunchstop, Inc.*, 107 S.W.3d 860, 866 (Tex. App.— Dallas 2003, no pet.). After all, if the header of the clause mandated exclusive venue in California, then the body's personal jurisdiction waiver would be surplusage.

To avoid that result, the clause must instead create permissive venue in California and waive any personal jurisdiction defense there. Moreover, the Magistrate Judge clearly erred in failing to resolve ambiguity in a contract of adhesion against the drafter. *See Sandquist v. Lebo Auto., Inc.*, 376 P.3d 506, 514 (Cal. 2016); *Ramsay*, 254 S.W.3d at 631. Thus, even if the provision could have two reasonable interpretations, Plaintiff's interpretation prevails.

**III.    The Transfer Order Is Contrary to Law Because Transfer to the Northern District of California Was Also Improper in View of Indiegogo's Asserted Arbitration Clause.**

Next, the magistrate judge erred by transferring this case without determining whether, as a threshold issue, Plaintiff's claims are subject to the agreement's arbitration clause. The language on which Indiegogo relied provided only that "Legal Disputes *Not Subject to Arbitration* Will Be Handled In San Francisco, CA." ECF 16 at 2-3 (emphasis added). The Magistrate Judge thus clearly erred in determining (ECF 58 at 9 n.5) that the case could be transferred to California *before* determining that Plaintiff's claims are not subject to arbitration. And those claims are not subject to arbitration for the reasons in Plaintiff's opposition to Indiegogo's motion to compel arbitration (ECF 28) and in Plaintiff's response to Indigogo's renewed arbitration motion (ECF 96).

Even if (counterfactually) the claim against Indiegogo were subject to arbitration, the proper forum would be an arbitral forum—not the Northern District of California—so there would still be no basis for transferring the case there. The arbitration clause states that Plaintiff may

arbitrate in its "hometown area." ECF 16-4 at 11. Neither Kickstarter nor LaunchBoom would properly be subject to transfer to the Northern District of California given that no claims against Indigogo would be pending there. Because the error in the order of operations formed the basis for the Magistrate Judge's determination that this case should be transferred to the Northern District of California, the Court should overrule and vacate the transfer order.

## IV.   Plaintiff Also Objects to the Magistrate Judge's Application of Section 1404(a) Because the Transfer Factors Clearly Favor Texas.

Finally, Plaintiff objects to the Magistrate Judge's application of 28 U.S.C. § 1404(a) as requiring transfer to the Northern District of California. ECF 58 at 11-13. Courts consider public-interest factors that include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *S.M.R Innovations LTD v. Apple Inc.*, 756 F. Supp. 3d 453, 460 (W.D. Tex. 2024). And with no applicable forum-selection clause, Courts also consider private-interest factors, including "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* "[C]ourts have also considered judicial economy in the analysis of weighing the public interest." *In re Bavaria Yachts USA, LLLP*, 575 B.R. 540, 562 (Bankr. N.D. Ga. 2017) (*citing Bollinger Shipyards Lockport v. Huntington Ingalls Inc.*, 2015 WL 65298, at *4 (E.D. La. Jan. 5, 2015)); *accord AXIS Reinsurance Co. v. Northrop Grumman Corp.*, 2018 WL 3326670, at *5 (C.D. Cal. Mar. 27, 2018). On balance, these factors show that this case should stay in Texas.

As an initial matter, judicial economy overwhelmingly favors the Western District of Texas. "Courts have noted that the holding of *Atlantic Marine* is based on its facts: one plaintiff,

one defendant and all of the claims—not just some—being subject to the forum selection clause." *Bavaria Yachts*, 575 B.R. at 562. The most efficient approach here is to deny transfer where multiple parties rely on competing, but inapplicable, forum-selection clauses. *See* ECF 16 (Indiegogo's Mot. to Transfer to the Northern District of California); ECF 19 (Kickstarter's Mot. to Transfer to the Southern District of New York); ECF 28 (Plaintiff's Resp. to Indiegogo's Mot.); ECF 29 (Plaintiff's Resp. to Kickstarter's Mot.). Proceeding in the Western District of Texas avoids the highly inefficient scenario in which this Court, in adjudicating Indiegogo's motion to compel arbitration, would force the case either to proceed in piecemeal fashion in multiple district courts or continue in a district with no connection to either remaining named Defendants. *See, e.g.*, *Ha Thi Le v. Lease Fin. Grp.*, 2017 WL 2915488, at *7 (E.D. La. May 9, 2017); WRIGHT & MILLER, 15 FED. PRAC. & PROC. JURIS. § 3845 (4th ed.) (cautioning against "requir[ing] the suit to be litigated in two places"); *see also Done! Ventures LLC v. Gen. Elec. Co.*, 2011 WL 13217221, at *4 (C.D. Cal. Aug. 5, 2011) (consideration of interest of justice and convenience when deciding among multiple transferee forums); *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 528 F. Supp. 2d 1358, 1359 (J.P.M.L. 2007) (permitting consolidation of thirteen antitrust actions for pretrial proceedings that shared factual questions pending in six districts to eliminate duplicative discovery, prevent inconsistent pretrial rulings, conserve resources of the parties, counsel, and judiciary); 15 U.S.C. § 22 (providing venue in "any district wherein [a corporation] may be found or transacts business").

To the extent that Plaintiff's claims arise from any contract, which they do not, they arise equally from Plaintiff's contracts with all named Defendants. It would therefore be inappropriate to simply "select one to enforce." *Contra Bio World Merch., Inc. v. Interactive Bus. Info. Sys., Inc.*, 2020 WL 6047605, at *4-5 (N.D. Tex. Oct. 9, 2020) ("tak[ing] th[at] approach" where, among

three FSCs, only one disagreed, and the contract containing the outlier was not the basis for any claim); *accord Primary Color Sys. Corp. v. Agfa Corp.*, 2017 WL 8220729, at *7 (C.D. Cal. July 13, 2017).

Likewise, judicial economy is served by rejecting any notion that the parties should be forced to litigate elsewhere. Although Plaintiff disagrees that any party's forum-selection clause should apply, judicial economy is not served by forcing this Court to adjudicate an additional (and unbriefed) argument that Indiegogo's forum-selection clause should control over Kickstarter's or LaunchBoom's competing forum-selection clauses. As explained above, the Magistrate Judge's contrary conclusion stemmed from the misunderstanding of Indiegogo's forum-selection clause and its inapplicability to this case. *See* ECF 58 at 9. That analysis is clearly erroneous and should be given no deference. In any event, each public- and private-interest factor supports retaining this case or is, at least, neutral. The public interest factors are addressed in turn, and the private-interest factors, none of which have been briefed previously in this litigation, also support retaining this case in the Western District.

**1.** Because transfer to less-crowded dockets is preferred, *e.g.*, *Siragusa v. Arnold*, 2013 WL 5462286, at *7 (N.D. Tex. Sept. 16, 2013), the first factor does not favor transfer. As the Magistrate Judge correctly noted, the Northern District of California has a heavy docket relative to that of the Western District of Texas, and this factor favors retaining the case here. *See* ECF 58 at 11.

**2.** The "interest in having localized controversies decided at home" strongly weighs against transfer. *Ravelo Monegro v. Rosa*, 211 F.3d 509, 512 (9th Cir. 2000); *accord Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022). This factor focuses on the "significant connections between a particular venue and the events that gave rise to a suit." *See In re Google LLC*, 2021 WL 4427899, at *5 (Fed. Cir. Sept. 27, 2021). The controversy is in no way "localized" to

California, *Def. Distributed*, 30 F.4th at 435, as this is a case based on Texas law involving a Texas company, *see Lightbeam Health Sols. Inc. v. Tidewater Physicians Multispeciality Grp.*, 2017 WL 3382458, at *3 (N.D. Tex. Aug. 7, 2017) (local presence, place of incorporation, offices, employees, and location of servers favor local interest); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) (consideration of "the local public and jury pool's interest in localized controversies"). Because Plaintiff is not a California corporation, a judicial district in that state provides no weight for Defendants in the analysis of this factor. *See, e.g.*, *Clark v. VIP Petcare, LLC*, 2023 WL 8459928, at *6 (N.D. Cal. Dec. 6, 2023). In the Fifth Circuit, the public interest concerns "the interest of non-party citizens in adjudicating the case" and "all that is required to show a local interest is a relevant factual connection between the events and the venue." *Tenn. Walking Horse Nat'l Celebration Ass'n v. United States Dep't of Agric.*, 2025 WL 736801, at *3 (N.D. Tex. Jan. 13, 2025) (cleaned up). The Magistrate Judge's determination was contrary to law given that the corporate residence of Coast Runner in the Austin Division is "immaterial to the Court's local interest factor analysis." *Id.*

Plaintiff elected to proceed in the Western District of Texas in view of Plaintiff's extensive efforts to launch a successful crowdfunding campaign from there, as well as the significant harm to the local economy and workers based on manufacturing, machining, and milling needs in the oilfield. *See* Diaz Decl., Exh. A, ¶¶ 4, 6-10, 11-13. The importance of on-demand small-scale machining capabilities to the economy is perhaps nowhere better understood than in the Permian Basin area served by the Midland/Odessa Division, where hundreds of companies operate in a competitive and often time-sensitive environment. *See* Diaz Decl., Exh. A, ¶¶ 11-13. A localized understanding is uniquely in the public interest because of the oilfield operations that could have benefitted from Plaintiff's product but for the illegal activity of the defendants in this case. And

there is no remotely comparable interest or understanding in California. Trying this case in Midland/Odessa therefore serves "the interest of *non-party citizens* in adjudicating the case." *In re Clarke*, 94 F.4th 502, 511 (5th Cir. 2024); *accord Walters v. Famous Transps., Inc.*, 488 F. Supp. 3d 930, 941 (N.D. Cal. 2020). Moreover, the action calls into question the work that Plaintiff is doing in this district because the CR-1 was destined to be distributed from this district and work that gave rise to the CR-1 and the attempted crowdfunding campaigns took place here. *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009). Also, when, as here, "there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor." *Id.* at 1338. The harm from Defendants' conspiracy to violate antitrust laws continues to affect persons in this district. This controversy merits review in the Western District of Texas.

**3.** The Texas court's familiarity with related litigation involving the parties and applicable state law also disfavors transfer. *United States v. Planned Parenthood Fed'n of Am.*, 2022 WL 19006361, at *4 (N.D. Tex. Sep. 20, 2022); *see also Decker*, 805 F.2d at 843 (considering "familiarity of each forum with the applicable law"). Indeed, the Fifth Circuit has especially noted that where, as here, federal law governs the controlling claims, there are no aspects of state law likely to "defy comprehension by a federal judge sitting in Texas." *Def. Distributed*, 30 F.4th at 436 (cleaned up). And federal judges in Texas are undoubtedly more familiar with the law governing Plaintiff's Texas state-law claim. *See, e.g.*, WRIGHT & MILLER, 15 FED. PRAC. & PROC. JURIS. § 3854 n.22 (4th ed.) (providing an example where a "[d]istrict court's familiarity with Massachusetts law, which governed in the case, weighed against transfer"). As noted above, California law applies, at most, to the interpretation of the forum-selection clause. But because no terms of service govern any of Plaintiff's claims, that choice of law provision does not govern the

merits or substance of this case. Therefore, Plaintiff's election to proceed under Texas law—because it is a Texas company that planned its crowdfunding campaign from Texas and was injured in Texas—is valid, and this Court, which is manifestly more familiar with Texas law, should retain this case.

**4.** Retention also avoids unnecessary conflicts of laws. By relying on competing forum-selection clauses, Defendants LaunchBoom, Kickstarter, and Indiegogo invite unnecessary conflicts of laws. Indeed, retaining this case in the Northern District of California creates an unnecessary conflict of laws; as Defendant Kickstarter argued in seeking transfer, it views the applicable law as that of New York, not California or Texas. *See* ECF 19 at 13.

**5.** Party and witness convenience and ease of access to proof likewise favor Texas as several parties and multiple witnesses will be located outside of California. *See, e.g.*, *All Voice Devs. US, LLC v. Microsoft Corp.*, 2010 WL 11468302, at *7 (E.D. Tex. Apr. 8, 2010) (finding factor would likely weigh against transfer "as all parties would need to transport relevant documents to the transferee district"). Indeed, Plaintiff, based in Austin, worked with design personnel based in Midland on the crowdfunding campaigns at issue in this case. *See* Diaz Decl., Exh. A, ¶¶ 4, 6-10. Evidentiary development and access to key witnesses clearly favors Texas.

## PRAYER

The objections to the Magistrate Judge' transfer ruling should be sustained and the case retained in the Western District of Texas.

September 24, 2025                    Respectfully submitted.

                                     */s/ Christopher D. Hilton*
                                     Judd E. Stone II
                                     Texas Bar No. 24076720
                                     Christopher D. Hilton
                                     Texas Bar No. 24087727
                                     Ari Cuenin
                                     Texas Bar No. 24078385
                                     Caroline Merideth
                                     Texas Bar No. 24091501
                                     Cody C. Coll
                                     Texas Bar No. 24116214
                                     **STONE HILTON PLLC**
                                     600 Congress Ave.
                                     Suite 2350
                                     Austin, TX 78701
                                     Telephone: (737) 465-3897
                                     judd@stonehilton.com
                                     chris@stonehilton.com
                                     ari@stonehilton.com
                                     caroline@stonehilton.com
                                     cody@stonehilton.com

## CERTIFICATE OF COMPLIANCE

Out of an abundance of caution, Plaintiff has adhered to the page-limit rule for motions other than discovery and case management motions. Therefore, I hereby certify that this document complies with Local Rule CV-7(c)(2) in that it is fewer than 20 pages in length, excluding the caption, signature block, certificates, and accompanying documents.

                                     */s/ Christopher D. Hilton*
                                     Christopher D. Hilton

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all counsel of record on September 24, 2025, via the Court's CM/ECF system.

                                     */s/ Christopher D. Hilton*
                                     Christopher D. Hilton