## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

**COAST RUNNER, INC.,**
    *Plaintiff,*

**v.**

**KICKSTARTER, PBC, et al.,**
    *Defendants.*

      **MO:24-CV-00326-DC**
      **MO:25-CV-00396-DC**

## OMNIBUS ORDER RESOLVING OBJECTIONS
## TO TRANSFER ORDER AND MOTION
## TO COMPEL ARBITRATION

Before the Court is Plaintiff Coast Runner's Statement of Appeal and Objections[1] to United States Magistrate Judge Ronald C. Griffin's Order Granting in Part and Denying in Part Motions to Sever and Transfer Venue,[2] which addressed Defendant Indiegogo, Inc.'s Motion to Sever and Transfer Venue, or, in the Alternative, Motion to Compel Arbitration;[3] Defendant Kickstarter, PBC's Motion to Transfer and/or Sever;[4] and Defendant Label Creative, LLC d/b/a Launchboom's Motion to Transfer.[5] The Magistrate Judge granted Indiegogo's transfer request and transferred the case to the Northern District of California. In doing so, he stayed consideration of the motion to compel arbitration and denied the remaining motions to sever and transfer to other venues.

That transfer rested on Indiegogo's forum selection clause, which by its terms applies only to those claims "not subject to arbitration." But because the claims *are* subject to

---

[1] Doc. 98.
[2] Doc. 58.
[3] Doc. 16.
[4] Doc. 19.
[5] Doc. 39.

arbitration, the lynchpin for the transfer order falls away. The Magistrate Judge therefore erred when he transferred this case based on the inapplicable forum selection clause. Thus, regarding Coast Runner's objections to the transfer, those are **SUSTAINED**. But because the claims are subject to arbitration, this Court **GRANTS** Indiegogo's alternative request to compel arbitration. And because arbitration must be compelled, the case against Indiegogo is **STAYED**.

That ruling narrows, but does not end, this case. Kickstarter and Label Creative invoke their own, broader forum selection clauses.[6] The Court's remaining choices are straightforward: proceed here against the non-arbitrating Defendants, sever and transfer the claims, or stay the entire case pending arbitration. Because the claims against the Defendants all arise from the same operative facts and because continued litigation risks colliding with and undermining the arbitration, the Court **STAYS THE ENTIRE CASE PENDING ARBITRATION** and may reassess severance or transfer later. Those motions are therefore **DENIED**.

I.    **Background**

    A. **Factual Background**

This story begins with a milling machine and ends with a crowdfunding campaign that was grounded almost as soon as it launched.

Coast Runner makes computer-controlled milling machines that cut raw materials like wood and metal into precise shapes.[7] One of its products, the CR-1, is described by Coast Runner as an "all-purpose" machine that is not "arms-related"—though other iterations of

---

[6] Kickstarter, however, consented to transfer to California. Doc. 19 n.12; Doc. 105 at 5.
[7] Doc. 102 at 2.

this technology have been notoriously associated with firearms and "ghost gun" manufacturing.[8]

To fund the CR-1, Coast Runner turned to crowdfunding: the use of online platforms "to collect small contributions from many people."[9] Specifically, it tried Kickstarter, with the help of Launchboom, and then—after that fizzled out—Indiegogo.[10] Each ultimately barred the campaign.[11]

At first, though, the platforms appeared enthusiastic. Indeed, one platform was so eager that it tried to poach the campaign from the other.[12] But then, the music stopped. Just hours after what was to be a 30-day campaign began, Kickstarter began disabling key features.[13] First, it removed "advertising perks."[14] Then, it hid the campaign. Finally, in an email with little explanation, it informed Coast Runner that it would terminate the campaign within 48 hours.[15] And in the hours and days that followed, Kickstarter ignored requests for information.[16]

---

[8] Doc. 1 ¶¶ 26-27, 30; Doc. 19 at 6.

[9]   Hannah   Alberstadt,   *What   Is   Crowdfunding?*,   WALL   STREET   JOURNAL, https://www.wsj.com/buyside/personal-finance/business-loans/what-is-crowdfunding?msockid=007d4aa998256ba61d745c46994f6a73 (last updated Jan. 30, 2025); Doc. 1 ¶¶ 1-2.

[10] Doc. 1 ¶¶ 4–8.

[11] *Id.* ¶¶ 5-6, 8.

[12] *Id.* ¶ 4.

[13] *Id.* ¶ 5.

[14] *Id.*

[15] *Id.*

[16] Doc. 1 ¶ 5.

Trying to salvage the launch, Coast Runner contacted Launchboom, which promised to smooth things over. Its CEO spoke with Kickstarter's CEO. But then Launchboom went dark, cut off communications, and issued an unsolicited refund.[17]

So Coast Runner pivoted to Indiegogo. And at first, it agreed to host—but in a fit of déjà vu—suspended the campaign the very next day without word.[18]

The core question here is why. Coast Runner frames the events as an "illegal conspiracy" to punish its founder, Cody Wilson, and his newest invention because of his political views.[19] Defendants, however, tell a different story. They say their Terms of Service bar campaigns that are "illegal, heavily regulated, or potentially dangerous, which includes weapons, amongst other prohibited items, and require that creators communicate candidly about what they plan to create, so as not to mislead backers."[20] The CR-1, they argue, fits that characterization.

In support, Defendants point to Wilson's history of creating other CNC machines like the Ghost Gunner, marketed to let users build "'DIY,' unregistered, unserialized pistols and rifles in the 'comfort and privacy of home.'"[21] They are, therefore, skeptical that the CR-1 has a different purpose.[22] And so, they point out, is California. In 2024, the State of

---

[17] *Id.* ¶ 6.

[18] *Id.* ¶¶ 7–8.

[19] *Id.* 1 ¶ 10.

[20] *E.g.*, Doc. 19 at 2-3.

[21] *E.g.*, *id.* at 1. Ghost guns are "unserialized, home-built firearms" that are largely "untraceable or invisible to the law." Jamie G. McWilliam, *The Unconstitutionality of Unfinished Receiver Bans*, 2022 Harv. J.L. & Pub. Pol'y Per Curiam 2, 5 (2022). They are viewed by many as controversial.

[22] Doc. 19 at 1.

California sued Coast Runner, alleging that the CR-1 violates a state law restricting CNC mills whose "sole or primary function" is making firearms.[23]

Each Defendant's Terms of Service reserves, in their own words, "the right to cancel, remove or suspend any project, at any time, for violating [the] rules and policies" stated in the Terms.[24] And users must click that they agree to these respective Terms when they create their account.[25] Defendants contend Coast Runner's assent to the various Terms render its claims subject to the Terms and thus subject to the relevant forum selection and arbitration clauses.[26] Despite those clauses, Coast Runner filed this case in a federal district court in the Western District of Texas, Midland/Odessa Division.

### B. Procedural Background

In an omnibus order resolving several motions, the Magistrate Judge granted in part and denied in part Indiegogo's Motion to Sever and Transfer Venue,[27] denied Defendant Kickstarter and Label Creative's similar motions,[28] and transferred this case to NDCA.[29] The Clerk of Court prematurely transferred the case before the parties could file objections in accordance with Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A). NDCA returned the case and the case was reopened under a new cause number. The parties then

---

[23] *See Complaint for Damages and Injunctive Relief, California v. Coast Runner Indus., Inc.*, 37-2024-00020896-CU-MC-CTL (Cal. Super. Ct.) ¶ 3.
[24] Doc. 19 at 3; Doc. 16 ¶ 5(b), 9; Doc. 39-4 ¶¶ 9-10.
[25] *E.g.*, Doc. 19 at 3; Doc. 16 at 2.
[26] *E.g.*, Doc. 16 at 2-4.
[27] Doc. 16.
[28] Docs. 19, 39.
[29] Doc. 58.

timely filed objections, along with supplemental briefing, either disputing or asking this Court to uphold the transfer.

## II.    Legal Standard

Nondispositive matters are reviewed for clear error or results contrary to law.[30] Factual findings are reviewed for clear error while legal conclusions are reviewed under the contrary to law standard. *De novo* review applies to the contrary to law standard.[31]

This Court treats motions to transfer venue, sever, and compel arbitration as non-dispositive.[32] Thus, it reviews the motion under the clear error and contrary to law standards.

An order contains clear error when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[33] This standard is "highly deferential."[34] If a magistrate judge's "account of the evidence is plausible in light of the record viewed in its entirety," a district judge may not reverse it.[35]

An order is contrary to law when the party demonstrates that the magistrate judge "erred in some respect in his legal conclusions."[36] Those conclusions are "freely reviewable by the district judge, who applies a *de novo* standard."[37]

---

[30] Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).

[31] *Daedalus Blue, LLC v. Microsoft Corp.*, No. W-20-CV-01152-ADA, 2022 WL 3031076, at *2 (W.D. Tex. Aug. 1, 2022) (internal citations omitted).

[32] *See Newman v. Plains All Am. Pipeline, L.P.*, No. 19-CV-00244-DC, 2021 WL 8444005, at *1 (W.D. Tex. Oct. 29, 2021).

[33] *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948)).

[34] *Gypsum Co.*, 333 U.S. at 395.

[35] *Resol. Tr. Corp. v. Sands*, 151 F.R.D. 616, 619 (N.D. Tex. 1993) (internal citations omitted).

[36] *Smith v. Smith*, 154 F.R.D. 661, 665 (N.D. Tex. 1994).

[37] *Id.*

The district court must either reject or "modify or set aside any [defective] part of the order."[38]

## III.  Discussion

This case presents a familiar problem in a slightly less familiar posture: three Defendants, three sets of online Terms, three forum selection clauses pointing to three fora, and an arbitration provision that may supersede them all. The Court must untangle multiple motions to transfer and/or sever, an alternative motion to compel arbitration, the Magistrate Judge's order addressing those motions, and the parties' objections and responses.

In his report, the Magistrate Judge transferred the entire case to NDCA despite an arbitration clause and in light of Indiegogo's forum selection clause, seemingly finding, albeit implicitly, that this case is "not subject to arbitration." But he deferred full consideration of the arbitration clause because it "would be better handled by the court well acquainted with the laws surrounding it."[39]

This case, however, *is* subject to arbitration. And therefore Indiegogo's forum selection clause does not apply. Defendants' contrary theory depends on finding that the only claims "subject to arbitration" are those already "in" arbitration. But that is not how the Terms use the phrase, and it is not how courts typically read it. In context, "subject to arbitration" is a matter of coverage: it asks whether the dispute *falls within the scope* of the arbitration provision, not whether arbitration has already been initiated. And because paragraph 18's forum selection clause is triggered only when a dispute is *not* covered by

---

[38] Fed. R. Civ. P. 72(a).
[39] Doc. 58 at 10.

arbitration, it provides no basis to transfer a case whose claims are, at minimum, within the scope of the arbitration clause and are likely arbitrable—given that the relevant arbitration and delegation clauses are airtight. Instead, arbitration must be ordered for the claims against Indiegogo.

The remaining question, then, is what to do with the rest of the case. When a court compels arbitration under the Federal Arbitration Act, it must stay the litigation for the parties bound by the arbitration agreement. But that mandatory stay does not automatically extend to non-signatories. Neither Kickstarter nor Label Creative signed Indiegogo's Terms, so their claims could theoretically proceed.

But they will not. The claims against the non-signatories arise from the same operative facts as the claims against Indiegogo, and they are tightly intertwined with the issues to be addressed in arbitration. Proceeding would risk inconsistent rulings and could substantially impair Indiegogo's right to a meaningful arbitration. Accordingly, the Court stays the claims against Kickstarter and Label Creative pending completion of arbitration— or at least a decision of whether the claims are arbitrable. As an alternative, this Court implements an independent, discretionary stay as a matter of docket management and judicial economy—and administratively closes this case in the interim.

**A. The Magistrate Judge Erred When He Transferred the Case.**

**1. Coast Runner's Claims are "Subject to Arbitration."**

Central to this dispute is the meaning of the phrase "subject to arbitration" in Indiegogo's Terms. Both the forum selection clause and paragraph 18's[40] choice of law provision on which Defendants rely are housed beneath the heading "Legal Disputes *Not Subject to Arbitration* Will Be Handled In San Francisco, CA and Subject to California Law."[41] Everything therefore turns on whether Coast Runner's claims fall within the category of disputes that are "subject to arbitration."

Defendants read that phrase to mean currently "in" arbitration—or at least already ordered to it.[42] And because these claims are not currently in arbitration and have not yet been compelled to it, Defendants contend that paragraph 18's forum selection and choice of law clauses control.[43] Coast Runner, however, disagrees. Although it separately argues that its antitrust claims are not subject to arbitration because they have "nothing to do with the Terms," it maintains that "subject to arbitration" refers to claims "within the scope of the arbitration clause"—regardless of whether arbitration has begun.[44] If these claims are truly not subject to arbitration, then paragraph 18 never comes into play: California law would not

---

[40] As the Court points out later, there are two such provisions: one in paragraph 18 and another in 19.

[41] Doc. 19-4 (emphasis added).

[42] Doc. 102 at 13-14; Doc. 99 at 1.

[43] *E.g.*, Doc. 16 at 13.

[44] Doc. 28 at 7; Doc. 106 at 17.

govern through that provision, and no forum-selection clause would require transfer to California.[45]

But as is explained below, although paragraph 18's forum selection and choice of law clauses do not govern this case, a choice of law clause elsewhere in the Terms does. California law therefore supplies the rules for interpreting the Terms, including what the phrase "subject to arbitration" means.[46]

Under California law, courts resolving contractual disputes ask themselves two questions. First, is the agreement reasonably susceptible to the interpretation urged? If not, the inquiry ends.[47] If it is, the court proceeds to the next question: what meaning did the parties intend?[48] Where contractual language is clear and explicit, courts enforce it according to its plain and ordinary meaning, without resort to extrinsic evidence or further interpretive work.[49] Ambiguity does not arise merely because a term could bear multiple meanings in the abstract; the competing interpretations must be reasonable in the context of the agreement as a whole.[50]

Here, the Terms are not reasonably susceptible to Defendants' "currently in arbitration" reading. That is proven by the Terms themselves, case law, as well as the phrase's plain and ordinary meaning.[51]

---

[45] This is the argument. However, again, as the Court pointed out in a prior footnote, there is another choice of law provision in paragraph 19.
[46] The result would be the same under Texas law.
[47] *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 107 Cal. App. 4th 516, 524 (2003).
[48] *Oceanside 84, Ltd. v. Fidelity Fed. Bank*, 56 Cal. App. 4th (1997).
[49] *Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th 677, 684 (2000); *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 53 (1997).
[50] *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1118 (1999).
[51] *Coast Plaza*, 83 Cal. App. 4th at 684.

Courts construing provisions limited to disputes "not subject to arbitration" have not understood "subject to" to mean currently "in." Instead, they have read it to point to claims that are within the scope of the arbitration clause or arbitrable.[52]

The Terms themselves support that reading. Throughout them, "subject to" is used to signal coverage—identifying whether some clause or provision applies to a category of disputes—rather than to describe disputes already pending in a forum. And absent an indication to the contrary, words and phrases are generally given a consistent meaning throughout an agreement.[53]

Start with paragraph 19's heading: "Legal Disputes *Subject to* Arbitration, Dispute Resolution, and Class Action Waiver." Read as Defendants propose, that heading would instead read: "Legal Disputes [Currently In] . . . Class Action Waiver." That makes little sense. Disputes cannot be currently "in" or "ordered to" a waiver. A waiver is a rule that governs or covers disputes that are subject to them. Read naturally, then, "subject to arbitration" describes disputes that are within the scope of the arbitration-and-waiver framework—not those already underway.

---

[52] *See, e.g., Connell v. ByteDance, Inc.*, No. 24-CV-07859-NC, 2025 WL 1828472, at *18 (N.D. Cal. July 1, 2025) (claims "subject to arbitration" are those where "the arbitration clause applies to the dispute at issue"); *Brooks v. Warnermedia Direct LLC*, No. CV 23-7579-GW-MRWX, 2023 WL 10706636, at *7 (C.D. Cal. Dec. 1, 2023), *adopted*, No. CV 23-7579-GW-MRWX, 2023 WL 10705852 (C.D. Cal. Dec. 4, 2023) (disputes "not subject to arbitration" are those that are "not arbitrable"); *Red Barn Motors, Inc. v. NextGear Cap., Inc.*, No. 114CV01589TWPDLP, 2020 WL 919464, at *14-15 (S.D. Ind. Feb. 26, 2020) (matters "not subject to arbitration" were matters that were not covered by the provision); *Personal Sec. & Safety Sys., Inc. v. Motorola, Inc.*, 297 F3d 388, 396 (5th Cir. 2002) (disputes or claims "not subject to arbitration" were those that were "non-arbitrable").

[53] *Caminetti v. Pac. Mut. Life Ins. Co. of Cal.*, 22 Cal. 2d 344, 358 (1943).

Additional support is found further down in paragraph 19, which provides that if a dispute is "not subject to the exclusions"—*e.g.*, intellectual property and small claims—then either party may initiate arbitration.[54] Substituting Defendants' status-based gloss (currently "in") for "subject to" would render that sentence nonsensical: a dispute cannot be currently "in" an exclusion in the way Defendants suggest.

Finally, this reading also accords best with ordinary usage and common sense. "Subject to" commonly means "affected by or possibly affected by," "likely to do [or have to do with]," or "dependent on."[55] Nothing in those definitions suggests a requirement that proceedings already be underway.

Read in context, paragraph 18 functions as a residual provision that applies to only a small sliver of claims not within the scope of the arbitration framework. And for those, it supplies both the forum, either state or federal court in San Francisco, and the governing law: California law. Paragraph 19, by contrast, covers virtually everything else.[56] It is "intended to be interpreted broadly" and "governs any and all disputes" not subject to explicit carveout.[57] And although "any and all disputes" refers only to those disputes "tied to

---

[54] Doc. 19-4 ¶ 19.

[55] *See Subject to*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/subject to (last accessed Feb. 2, 2026) (defining "subject to" as "affected by or possibly affected by," "likely to do [or have to do with]," or "dependent on"); *Subject*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "subject to" as "dependent on or exposed to (some contingency)," including "being under discretionary authority").

[56] Subject to some restrictive language and law, discussed next, and the delegation clause, discussed below.

[57] Doc. 19-4 ¶ 19.

the underlying contract" and having a "real source" in it, [58] that language still sweeps broadly enough to encompass Coast Runner's claims.

As discussed below, Coast Runner's antitrust claims are not freestanding challenges untethered from the parties' contractual relationship. The alleged boycott stems directly from Coast Runner's decision to sign up for and operate within Defendants' platforms, and from Defendants' exercise of rights expressly conferred by their Terms, including contractual gatekeeping provisions permitting them to remove campaigns involving potentially illegal or controversial products or conduct. The Terms do not merely provide background context for the dispute; they supply the very mechanism by which the alleged anticompetitive conduct is said to have occurred. Because the claims have a "real source" in the contract and cannot be adjudicated without interpreting and applying the Terms, they fall within the arbitration provision's broad coverage and are "subject to arbitration" within the meaning of paragraph 19.[59]

Accordingly, even if "subject to" could mean "currently in" in some other setting, it does not carry that meaning here. In this agreement, the phrase refers to disputes within the scope of the arbitration provision. On that plain reading, Coast Runner's claims are "subject to arbitration." The Magistrate Judge erred to the extent he concluded otherwise and relied on paragraph 18's forum-selection clause to transfer the case.

---

[58] *Moritz v. Universal City Studios LLC*, 268 Cal. Rptr. 3d 467, 473 (2020) (citation omitted).
[59] *Id.*

### 2. Paragraph 18's Choice of Law Provision Does Not Apply, but California Law Nonetheless Governs.

To interpret the Terms, the Court must determine which—if any—choice of law provision applies. Indiegogo points to paragraph 18's as controlling.[60] But that provision appears beneath the heading "Legal Disputes Not Subject to Arbitration Will Be Handled In San Francisco, CA and Subject to California Law." And, as explained above, Coast Runner's claims are subject to arbitration.

Thus, paragraph 18's choice of law language does not expand beyond its own trigger. Although it states broadly that "[t]he Terms and the relationship between you and Indiegogo shall be governed in all respects by the laws of the State of California," that statement clarifies the governing law only for the limited subset of disputes excluded from arbitration. For disputes "subject to arbitration" under paragraph 19's broad coverage, paragraph 18's choice of law provision never comes into play.

Paragraph 19, however, contains its own California choice of law clause at the end. It likewise provides that "[t]he Terms and the relationship between you and Indiegogo shall be governed in all respects by the laws of the State of California."[61] Because Coast Runner's claims arise out of and relate to the Terms and its relationship with Indiegogo, paragraph 19 supplies the governing law for interpreting the agreement.[62]

---

[60] Doc. 16 at 13.

[61] Doc. 16-4 ¶ 19.

[62] *See Weslaco Holding Co. v. Pittman*, No. 2:06-CV-598, 2007 WL 2287882, at *2 (E.D. Va. Aug. 6, 2007) (holding materially identical language constituted a valid choice of law provision).

Accordingly, the Magistrate Judge erred to the extent it treated paragraph 18's choice of law provision as the operative one for these claims. The proper source—given that the claims are "subject to arbitration"—is paragraph 19.[63]

### 3. The Forum Selection Clause Does Not Apply.

At issue next is the forum selection clause, which served as the principal basis for the Magistrate Judge's transfer order. But like the choice of law clause Indiegogo invokes, the forum selection clause appears in paragraph 18, which—by its heading and terms—applies only to disputes "not subject to arbitration." The clause is explicit: "For any action *not subject to arbitration*," the user submits to the personal jurisdiction of the state or federal courts in San Francisco, California.[64] But as explained above, the claims here are subject to the arbitration provision. Paragraph 18 therefore never activates and cannot supply a basis for transfer. The Magistrate Judge thus erred in transferring the case to NDCA based on an inapplicable forum selection clause.[65]

Accordingly, the Court **VACATES** the transfer portion of the Magistrate Judge's Order and **DENIES** Indiegogo's motion to transfer. Because Indiegogo alternatively seeks to compel arbitration, the Court turns next to the enforceability of the arbitration provision.

---

[63] It is not exactly clear to this Court the extent to which the Magistrate Judge considered the choice of law provision at all. The Magistrate Judge seemed to view the choice of law provision not as a distinct provision but as part of the forum selection clause. Doc. 58 at 7 (discussing only a forum selection clause and arbitration clause and including the choice of law provision in what it called the forum selection clause).

[64] Doc. 16-4 ¶ 18 (emphasis added).

[65] *See Darrow v. InGenesis Inc.*, No. SA-20-CV-00530-XR, 2020 WL 3620430, at *5 (W.D. Tex. July 2, 2020) (construing materially similar forum selection and choice of law provisions limited to "any matter not subject to arbitration" as inapplicable to claims covered by an agreement to arbitrate).

**B. The Court Grants Indiegogo's Alternative Request to Compel Arbitration.**

### A. The Arbitration Clause

Pursuant to the Federal Arbitration Act (the "FAA"),[66] written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[67] The FAA further provides that a party seeking to enforce an arbitration agreement may petition the court for "an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."[68] Indiegogo has done so here.[69]

Determining whether to compel arbitration generally involves a two-step inquiry.[70] First, the court asks whether the parties agreed to arbitrate the dispute in question.[71] That inquiry ordinarily has two components: whether a valid agreement to arbitrate exists and whether the agreement covers the dispute at issue.[72] Courts typically resolve both questions.[73]

That framework changes, however, where the arbitration agreement contains a valid delegation clause—that is, a provision clearly and unmistakably assigning questions of arbitrability to the arbitrator. In that circumstance, courts must respect the parties' decision and refrain from deciding issues of scope or arbitrability themselves.[74]

---

[66] 9 U.S.C. § 1 *et seq.*.
[67] *Id.* § 2.
[68] *Id.* § 4.
[69] *See* Doc. 16 (seeking, in the alternative, an order compelling arbitration).
[70] *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985).
[71] *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).
[72] *Id.*
[73] *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986).
[74] *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 65 (2019).

The second step of the analysis asks whether "legal constraints external to the parties' agreement" foreclose arbitration of the claims at issue.[75] Assuming a valid agreement to arbitrate, arbitration must be compelled unless Congress has clearly indicated, through a federal statute, that the claims are non-arbitrable.[76]

The party seeking to compel arbitration bears the initial burden of establishing the existence of an arbitration agreement and showing that the asserted claims fall within its scope. The burden then shifts to the party resisting arbitration to demonstrate why the agreement should not be enforced.[77] Where a valid arbitration agreement encompasses the dispute, arbitration is mandatory.[78]

### 1.  Step One: Did the Parties Agree to Arbitrate the Dispute?

#### a.  Is the Agreement Valid?

Because Indiegogo invokes a delegation clause, the Court's analysis under the first prong is mostly limited to the threshold question of contract formation[79]—whether an agreement exists between the parties at all.[80] Arbitration is a matter of contract, and that formation inquiry is governed by state law principles—here, California law.[81]

---

[75] *Mitsubishi*, 473 U.S. at 628.

[76] *Id.*

[77] *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015); *Smith v. H.F.D. No. 55, Inc.*, No. 2:15-CV-01293-KJM-KJN, 2016 WL 881134, at *4 (E.D. Cal. Mar. 8, 2016).

[78] *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

[79] The Court does, however, for the avoidance of doubt, conduct a quick analysis below.

[80] *Bazine v. Kelly Servs. Glob., LLC*, No. 22-cv-07170-BLF, 2023 WL 4138252, at *3 (N.D. Cal. June 21, 2023).

[81] *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

Under California law, a valid contract requires capacity, mutual consent, a lawful object, and consideration.[82] Mutual assent remains the touchstone in online contracting, and it applies with particular force to arbitration provisions.[83]

The record establishes that assent here was obtained through a clickwrap process. To create an Indiegogo account, Coast Runner was required to check a box affirmatively stating that it agreed to the Terms and had read and understood the Privacy Policy, both of which stood out and were hyperlinked and readily accessible.[84] Absent that assent, the transaction could not proceed.[85]

The Terms also conspicuously disclose the arbitration requirement. Immediately following the table of contents, a bolded and underlined notice titled "AGREEMENT TO ARBITRATION" advises users that disputes will be resolved through binding arbitration, and paragraph 19 sets forth the breadth of covered disputes and the limited carveouts.[86] This is not a case involving an inconspicuous provision buried in a document of unclear contractual character.[87]

---

[82] *Lopez v. Charles Schwab & Co.*, 118 Cal. App. 4th 1224, 1230 (2004) (citing CAL. CIV. CODE § 1550).

[83] *See Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 460 (2021); *Long v. Provide Com., Inc.*, 245 Cal. App. 4th 855, 862 (2016).

[84] Doc. 16-4.

[85] *Bugarin v. All Nippon Airways Co. Ltd.*, No. 20-CV-03341, 2021 WL 4974978, at *3 (N.D. Cal. Oct. 26, 2021) (enforcing clickwrap arbitration agreement under California law where the transaction could not be completed without accepting the terms).

[86] Doc. 16-4 at 1, 9–10.

[87] *See Sellers*, 73 Cal. App. 5th at 461 (discussing cases of "inconspicuous contractual provisions of which [the signee] was unaware, contained in a document whose contractual nature is not obvious.").

Coast Runner then reaffirmed assent the next day when it clicked "Launch Campaign" after being advised that doing so agreed to Indiegogo's Terms.[88] It could not have launched the campaign without that acceptance.

On this record, then, the Court finds no issues of consent as to the Terms and no dispute as to capacity or consideration. The Terms' arbitration provision is therefore valid.

### b.  What's the Scope?

#### i.    Is the Delegation Clause Valid?

Ordinarily, questions of scope and arbitrability are for the courts. The Supreme Court has recognized, however, that parties may agree to delegate "gateway questions of arbitrability" to the arbitrator through a delegation provision—that is, an agreement to arbitrate threshold issues concerning the arbitration agreement itself.[89] For such a provision to be enforceable, there must be "clear and unmistakable" evidence that the parties agreed to arbitrate those issues.[90] When that standard is met, the court must enforce the delegation clause under FAA § 2, absent generally applicable contract defenses.[91]

Indiegogo's delegation provision provides that:

> The arbitrator, and not any federal, state, or local court or agency, *shall have exclusive authority* to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of these Terms, Additional Policies, or the Privacy Policy, including but not limited to any claim that all or any part of these Terms, Additional Policies, or Privacy Policy is void or voidable, *whether a claim is subject to arbitration*, or the question of waiver by litigation conduct.[92]

---

[88] Doc. 16 at 14; Doc. 16-1 ¶¶ 7, 12–13.

[89] *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010).

[90] *Id.* at 66, 69 n.1 (citation modified).

[91] *Id.* at 70 (quoting 9 U.S.C. § 2).

[92] Doc. 16-4 ¶ 19 (emphasis added).

That language clearly and unmistakably delegates most issues, including this claim's arbitrability, to an arbitrator.[93]

Courts in California have treated materially identical language as a valid delegation of arbitrability.[94] In *Turbin v. Thumbtack*, a California federal court looking to California state law found that a virtually identical delegation clause was "unambiguous."[95] The court highlighted that the clause was within a section where, at the top, the reader is carefully cautioned "to read the section 'CAREFULLY' since it affects 'LEGAL RIGHTS.'"[96] The court thus found that this was not an instance "in which the barriers to locating the delegation clause prevent a finding of clear and unequivocal intent by users to delegation arbitrability."[97] The court also found that the clause was not unconscionable or otherwise unenforceable.[98]

---

[93] Coast Runner does not dispute the validity of the delegation clause generally. It only disputes whether this claim is covered.

[94] *Turbin v. Thumbtack, Inc.*, No. 25-CV-03388-EMC, 2025 WL 3013972, at *4 (N.D. Cal. Oct. 28, 2025); *Collett v. Ancestry.com DNA LLC*, No. 19-CV-03743-RS, 2019 WL 13253477, at *3 (N.D. Cal. Dec. 19, 2019).

[95] That provision reads:

> The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of these Terms or the Privacy Policy, including but not limited to any claim that all or any part of these Terms or Privacy Policy is void or voidable, whether a claim is subject to arbitration, or the question of waiver by litigation conduct. The arbitrator shall be empowered to grant whatever relief would be available in a court under law or in equity. The arbitrator's award shall be written and shall be binding on the parties and may be entered as a judgment in any court of competent jurisdiction.

[96] *Turbin,* 2025 WL 3013972, at *4.

[97] *Id.* (comparing circumstances to *Schlueter-Beckner v. SimpliSafe, Inc.*, No. 3:25-CV-01764 (CRB), 2025 WL 2162948, at *8, 2025 U.S. Dist. LX 146568 at *22-23 (N.D. Cal. July 30, 2025), whereby the delegation clause was buried in "already 'dense'" Terms of Service).

[98] *Id.* at *5-6.

That exact scenario is present here. As if the Terms were ripped straight from those in *Turbin*, the provision here containing the delegation clause also carefully advises the reader to "READ THIS SECTION CAREFULLY" as it "AFFECTS YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT."[99] And, again, the delegation clause itself is a veritable carbon copy, save a few words.

That makes this Court's job easy, as it is clear from cases like *Turbin* that Indiegogo's delegation clause is valid.[100]

### ii.    What is the Scope of the Delegation Clause?

It is undisputed that, where a valid delegation clause exists, questions of arbitrability are presumptively reserved for the arbitrator. Some courts, however, have nonetheless recognized a narrow, antecedent role for the courts in determining whether a particular dispute even falls within the scope of the delegation clause itself.[101] This limitation follows from the principle that an arbitrator "can only be delegated claims that the parties clearly and unmistakably intended to transfer such power to."[102] That inquiry does not encroach on the

---

[99] Doc. 16-4 ¶ 19.

[100] For the sake of clarification, there is no clear argument that the delegation provision, or any provision of the Terms for that matter, is unconscionable. *Turbin*, 2025 WL 3013972, at *4 (citations to cases discussing unconscionability in arbitration provisions omitted); *contra* Doc. 33 at 9-10 (interpreting Coast Runner's complaint that arbitration will strip it of "substantive antitrust rights" as unconscionability argument). Coast Runner does not dispute the validity of the delegation clause generally. It only disputes whether this claim is covered.

[101] *See J2 Res., LLC v. Wood River Pipe Lines, LLC*, No. 4:20-CV-2161, 2020 WL 4227424, at *10–11 (S.D. Tex. July 23, 2020).

[102] *Id.* at *11 (citing *Kubala v. Supreme Prod. Servs.*, Inc., 830 F.3d 199, 201 (5th Cir. 2016) ("A delegation clause giv[es] the arbitrator the primary power to rule on the arbitrability of *a specific claim* . . . ") (emphasis added)).

arbitrator's authority, as it simply ensures that the court does not "rewrite the parties' contract" by forcing them to delegate issues they did not clearly agree to delegate.[103]

This delegation provision grants the arbitrator the broad and exclusive authority to resolve "all disputes arising out of or relating to the interpretation, applicability, enforceability, or formation of these Terms."[104] Coast Runner, however, argues that while those provisions might be otherwise valid, its antitrust claims fall outside the scope because they are untethered from the Terms and therefore do not "relate to" them.[105] This Court disagrees.

Despite Coast Runner's efforts to characterize this case as a freestanding antitrust dispute, the alleged restraint is inseparable from the contractual framework governing access to Defendants' platforms. Each Defendant operates under Terms that prohibit illegal or controversial campaigns and authorize the removal of offending content. The product at issue here is, at a minimum, controversial and—according to at least one state—potentially illegal. Defendants' ability to delist campaigns under those rules is therefore central to the operation of the platforms and to the dispute itself.

That reality distinguishes this case from the authorities on which Coast Runner relies.[106] In *Coors Brewing Co. v. Molson Breweries*, the Tenth Circuit rejected a blanket rule compelling arbitration of all antitrust claims, but it did so in the context of a market concentration theory that was independent of the parties' licensing agreement.[107] Market

---

[103] *Id.*

[104] Doc. 16-4 ¶ 19.

[105] Doc. 28 at 4, 13–14.

[106] *Id.* at 13–15.

[107] 51 F.3d 1511, 1513, 1517 (10th Cir. 1995).

concentration claims can often be litigated without reference to any specific contractual rights or obligations.[108]

By contrast, the *Molson* court compelled arbitration of claims that depended on rights and duties created by a license agreement, including claims involving the use of confidential information and alleged breaches of contractual obligations.[109] That distinction is dispositive here. Coast Runner's claims, like those sent to arbitration in *Molson*, depend on the Terms.[110] Here, the platform access and deplatforming decisions occurred only because Coast Runner assented to those Terms and agreed to be governed by them.

Coast Runner insists that Defendants' alleged collusion "could have occurred regardless of whether Plaintiff acceded to any terms."[111] But, again, that contention ignores the pled defenses and the mechanism of the alleged restraint.[112] Defendants assert that they denied service under contractual gatekeeping provisions, and Coast Runner seemingly disputes their authority to do so. Resolving that dispute necessarily requires interpretation and application of the Terms. Thus, the contractual relationship here is not "fortuitous"; it is the foundation of the parties' interaction and the alleged exclusion itself.[113]

---

[108] *Id.* at 1517.

[109] *Id.* at 1517–18.

[110] *Id.* at 1515–16 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 723 F.2d 155, 159 (1st Cir. 1983), *aff'd in part, rev'd in part*, 473 U.S. at 614).

[111] Doc. 28 at 15.

[112] *See Mitsubishi*, 473 U.S. at 622 (discussing consideration of "bona fide defenses" in determining whether an antitrust claim was covered by arbitration clause).

[113] *See Molson*, 51 F.3d at 1516 (discussing claims that could not be compelled to arbitration because the contractual relationship was "simply fortuitous").

Accordingly, the delegation clause encompasses Coast Runner's claims. And even if doubt remained, the FAA requires that such doubts be resolved in favor of arbitration.[114] The Court therefore concludes that the parties intended to delegate arbitrability of these claims. The same reasoning would independently support a finding that the claims fall within the scope of the arbitration clause itself, if the Court were required (or allowed) to reach that question.

### 2. Prong Two: Do Legal Constraints Foreclose Arbitration?

The second and final prong of the arbitration analysis asks whether "legal constraints external to the parties' agreement" foreclose arbitration of the claims at issue.[115] Any such constraints "may be found only in other federal statutes, not in state law or policy."[116]

Coast Runner contends that compelling arbitration under the JAMS Rules would deprive it of treble damages, costs, and attorney fees mandated by the Sherman Act.[117] It points in particular to JAMS Rule 24(c), which provides that "[t]he Arbitrator may grant any remedy or relief that is just and equitable and within the scope of the Parties' Agreement, including, but not limited to, specific performance of a contract or any other equitable or legal remedy."[118] According to Coast Runner, the use of the word "may" renders monetary

---

[114] *Id.* at 1514.
[115] *Mitsubishi*, 473 U.S. at 628.
[116] *Kilgore v. KeyBank, Nat'l Ass'n*, 673 F.3d 947, 961 (9th Cir. 2012), *on reh'g en banc*, 718 F.3d 1052 (9th Cir. 2013). The Court is, however, unaware of any state policies or law that would foreclose the issue.
[117] Doc. 28 at 18 (citing 15 U.S.C. § 15(a)).
[118] *Id.* at 19.

relief merely permissive rather than mandatory.[119] It raises similar concerns about attorney fees under JAMS Rule 24(g) and argues that arbitration would unduly restrict discovery.[120]

The Court is unpersuaded. As Indiegogo correctly notes, the JAMS Rules expressly authorize arbitrators to award "*any* . . . legal remedy," including statutory damages and attorney fees where authorized by law. The rules Coast Runner cites are general procedural provisions; they do not purport to displace or limit substantive federal statutory remedies. That an arbitrator "may" award relief does not mean that relief is unavailable—only that it is to be awarded where legally warranted.

Thus, Coast Runner's arguments do not establish an impermissible "effective vindication" problem. The Supreme Court has rejected the contention that arbitration is foreclosed simply because it may alter the forum or procedures through which statutory claims are pursued.[121] Arbitration is impermissible if it operates as a "prospective waiver of a party's right to pursue statutory remedies."[122] Coast Runner has identified no provision in the arbitration agreement or the JAMS Rules that prospectively waives its right to treble damages, costs, or attorney fees under the Sherman Act.

Finally, generalized complaints about limited discovery are insufficient to foreclose arbitration. Differences in procedural mechanisms between arbitration and litigation do not constitute a legal constraint barring arbitration of federal statutory claims.[123]

---

[119] *Id.*

[120] *Id.*

[121] *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236–38 (2013).

[122] *Id.* at 235 (quoting *Mitsubishi*, 473 U.S. at 637 n.19).

[123] *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991).

Accordingly, the Court concludes that no external legal constraint forecloses arbitration of Coast Runner's claims. Having determined that the arbitration agreement is valid and enforceable—and that the delegation clause applies—the Court must compel arbitration. Indiegogo's alternative motion to compel arbitration is therefore **GRANTED**, and the claims against Indiegogo are **ORDERED TO ARBITRATION** in accordance with the Terms.

## C. The Claims Against Kickstarter and Label Creative are Stayed Pending Arbitration.

The remaining question is how to proceed with the claims against the non-signatory Defendants. When a court compels arbitration under the FAA, it must stay the litigation for the parties bound by the arbitration agreement.[124] That mandatory stay, however, does not automatically extend to non-signatories.[125] Accordingly, while the claims against Indiegogo must be stayed, the claims against Kickstarter and Label Creative require separate analysis.

In the Fifth Circuit, a stay of claims involving non-signatories may be required where proceeding would undermine the arbitration.[126] Courts consider three factors: (1) whether the arbitrated and litigated disputes involve the same operative facts; (2) whether the claims are "inherently inseparable"; and (3) whether allowing the litigation to proceed would have a "critical impact" on the arbitration.[127] The inquiry is not whether the non-signatory would be

---

[124] *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

[125] *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983) (noting that the decision to stay proceedings with regard to nonparties to the arbitration "is one left to the district court . . . as a matter of . . . discretion," rather than required by the FAA).

[126] *See Waste Mgmt., Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 343 (5th Cir. 2004); *BOKF, NA v. Wise*, No. 3:18-CV-794-N, 2019 WL 7902963, at *1 (N.D. Tex. Apr. 25, 2019).

[127] *Waste Mgmt.*, 372 F.3d at 343.

prejudiced by a stay, but whether proceeding would destroy the signatory's right to a meaningful arbitration.[128] If each of the factors is met, a mandatory stay is proper.

Those factors are satisfied here. Coast Runner alleges a coordinated scheme among Defendants to exclude it from the relevant market and prevent it from receiving funding for its CR-1. And an overarching set of communications and actions are offered to establish liability to each Defendant. The operative factual questions—whether a concerted agreement existed, how it was implemented, and whether it caused anticompetitive harm—are generally common to all Defendants and thus rise or fall together. The claims are therefore also inherently inseparable.

And because the claims are inseparable and arise from the same operative facts, allowing the litigation to proceed against Kickstarter and Label Creative would have a critical impact on the arbitration. Proceeding in parallel would create a substantial risk of inconsistent factual findings and legal conclusions, thereby undermining Indiegogo's right to a meaningful arbitration.[129]

But even if a mandatory stay were not warranted under *Waste Management*, the Court would exercise its discretion to stay the claims against the non-signatory Defendants. District courts possess inherent authority to stay proceedings involving non-arbitrating parties as a matter of docket control and judicial economy.[130]

---

[128] *Id.* (citing *Adams v. Georgia Gulf Corp.*, 237 F.3d 538, 541 (5th Cir. 2001)).

[129] *See Waste Mgmt.*, 372 F.3d at 345; *BOKF*, 2019 WL 7902963, at *1 (finding that "intertwined claims" meant allowing part of the litigation to proceed would "destroy [the] right to a meaningful arbitration."); *Broussard v. First Tower Loan, LLC*, No. CV 15-1161, 2016 WL 879995, at *6 (E.D. La. Mar. 8, 2016) (same).

[130] *In re Hornbeck Offshore Corp.*, 981 F.2d 752, 755 (5th Cir. 1993); *White v. KPMG LLP,* 180 F. App'x 498, 499 (5th Cir. 2006).

Accordingly, the claims against all Defendants are **STAYED** pending arbitration. This action is **ADMINISTRATIVELY CLOSED**, subject to reopening upon motion following the conclusion of arbitration or a decision that the claim(s) are not arbitrable.

## IV.     Conclusion

In summary, this Court therefore **OVERRULES IN PART** the Magistrate Judge's Order Granting in Part and Denying in Part Motions to Sever and Transfer Venue.[131] All motions to sever or transfer venue[132] are **DENIED**. Indiegogo's Alternative Motion to Compel Arbitration and Stay[133] is **GRANTED**. This decision **MOOTS** Indiegogo's new Motion to Compel Arbitration and Stay.[134]

The Court hereby **ORDERS ARBITRATION OF THE CLAIMS AGAINST INDIEGOGO** to be initiated as soon as possible. Those claims are **STAYED** pursuant to the mandatory stay requirement set out in Section 3 of the FAA. The remaining claims are also **STAYED** for the reasons set out above. The Court agrees with the Magistrate Judge that severance is not warranted, at least at this time.

---

[131] Doc. 58.
[132] Docs. 16, 19, 39
[133] Doc. 16.
[134] Doc. 88.

This entire matter is therefore **STAYED** and **CLOSED** for administrative purposes pending results of the arbitration.

It is so **ORDERED**.

SIGNED this 22nd day of February, 2026.

DAVID  COUNTS
UNITED STATES DISTRICT JUDGE